(5 Misc. Rep. 245.)

### SPITZ v. MUTUAL BEN. LIFE ASS'N OF AMERICA.

(Common Pleas of New York City and County, General Term. October 2, 1893.)

1. MUTUAL INSURANCE—WAIVER OF FORFEITURE—AUTHORITY OF OFFICERS.
    A certificate of mutual insurance provided that a waiver of any forfeiture must be in writing, signed by the secretary and one other officer, previously authorized by the board of directors or executive committee, but no form of waiver was prescribed, nor was the authority required to be in writing. *Held,* that where the insured incurred a forfeiture by nonpayment of premiums, and afterwards paid the premiums to the company's assistant cashier, taking therefor receipts purporting to have been signed by the secretary and cashier, it will be presumed that the officers signing and issuing the receipts were duly authorized, and the assistant cashier's denial of authority only created a conflict of evidence, requiring a submission of that question to the jury.

2. SAME—FORFEITURE—ESTOPPEL.
    Where a mutual insurance association receives payment of defaulted premiums on a certificate of membership, and recognizes the insured as a member, it is afterwards precluded from claiming a forfeiture as for nonpayment of such premium.

3. SAME—REINSTATEMENT—CONCEALMENT OF FACTS.
    Insured was reinstated to membership of defendant insurance association on the payment of defaulted premiums while he was suffering from the disease which eventuated in his death, without any inquiry by defendant as to his condition of health. *Held,* that insured's failure to voluntarily disclose his condition was not such a concealment as to avoid his membership.

4. SAME—APPLICATION.
    In his application for membership in defendant association, insured was asked, "What amounts are now insured on your life, and in what companies?" and in answer he failed to mention his membership of two

benevolent associations, which entitled the designated beneficiary to the payment of a mortuary benefit on his demise. *Held* that, as benevolent associations are not always regarded as insurance companies, nor mortuary benefits as life insurance, whether the failure of insured to mention his connection with the benevolent associations was a concealment of material facts was a question for the jury.

**5. SAME—MEMBERS OF FAMILY.**

Insured was also asked the number of his brothers, and in his answer he failed to mention three half-brothers. *Held* that, as the term "brother" is not always understood to include a half-brother, whether the failure was a concealment of a material fact was a question for the jury.

Appeal from trial term.

Action by Lena Spitz against the Mutual Benefit Life Association of America to recover the mortuary sum payable to her pursuant to the terms of her husband's membership in the defendant association. The court directed the dismissal of the complaint after both parties had concluded the introduction of evidence. Plaintiff appeals. Reversed.

The deceased's application for membership was made March 12, 1889. He was admitted as a member, and a policy or certificate of membership was issued to him April 9, 1889, and he died January 9, 1890. The defense was that the membership was forfeited for nonpayment of the premiums referred to in the opinion of the court, and that it and all benefits following therefrom were avoided because of the member's suppression or concealment of material facts, and by breach of his warranty of the truth of his representations in his application for membership, all of which representations were agreed to be taken as material.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Hastings & Gleason, (George S. Hastings, of counsel,) for appellant.

E. T. Lovatt, for respondent.

BISCHOFF, J. This action was brought by the widow and beneficiary of Ignatz Spitz to recover the mortuary sum payable upon his death pursuant to the terms of his certificate of membership in the defendant association. As part of the contract of membership, it was agreed that for nonpayment of any premium at maturity, or for any breach of the member's warranty of the truth of the representations made in his application for membership, all of which representations were agreed to be deemed material, or for the suppression or concealment of any material fact, the membership, and all rights and benefits accruing therefrom, should become forfeited and avoided. Defendant's answer set up as a defense that at the time of his death Spitz's membership had been forfeited and avoided for each of the causes indicated. On the trial of the issues, the learned trial judge, after both parties had concluded the introduction of evidence, on motion of defendant's counsel, withdrew the case from the jury, and dismissed the complaint. The particular grounds of the motion were that it conclusively appeared from the evidence that Spitz's membership was forfeited for nonpayment of premiums; that there was insufficient evidence of a waiver of the forfeiture;

that it further appeared that, at the time of his application for membership, Spitz suppressed or concealed certain pertinent and material facts; and that he was guilty of a breach of warranty respecting the truth of the representations contained in his application, by which his membership was avoided. It is indisputable, and the fact is conceded by appellant, that on December 21, 1889, Spitz's membership was forfeited, owing to his failure to pay four several premiums which had matured, respectively, on May 15th, July 15th, September 15th, and November 15th of the same year, and that a fifth premium would have matured on January 15, 1890. By express provision of the certificate of membership, the indorsements thereon were made part and parcel of the contract of membership, and from these indorsements it appeared that a waiver of any forfeiture, to be operative and binding on the defendant, must be in writing, signed by the secretary and one other officer, and previously authorized by the board of directors or executive committee. No particular form of waiver was prescribed; neither was it required that the approval of the board of directors or executive committee should be signified in writing. On December 21, 1889, Spitz caused the aggregate amount of the five premiums above mentioned to be tendered to the assistant cashier at defendant's office, by whom it was received, and who issued a several receipt for each premium, purporting to have been signed by the secretary and cashier. The legal presumption in favor of the performance of duty precludes any claim by defendant, in the absence of evidence to such effect, that either the assistant cashier, in the issue of the receipts, or the secretary and cashier, in signing them, acted without authority from the board of directors or executive committee. Therefore, since the effect of the receipt of the premiums was to recognize the vitality of Spitz's membership, the receipts, signed as required, constituted a sufficient waiver in writing, according to the terms of the contract of membership. The assistant cashier's denial of authority, in view of the presumption referred to, created but a conflict of evidence, to be determined by the jury. Kahn v. Lesser, (Com. Pl. N. Y.) 18 N. Y. Supp. 98.

But furthermore, and independently of any waiver, we are of the opinion that defendant was precluded from claiming a forfeiture for nonpayment of the premiums by a new agreement, founded upon adequate consideration. It was competent for defendant to waive any provision for its benefit reserved in the contract of membership, (Kenyon v. Association, 122 N. Y. 247, 25 N. E. Rep. 299;) and, referring to the indorsements upon the certificate of membership issued to Spitz, it will appear that in no event was the letter to become indebted to defendant, or credit be given him for any premium, the penalty for nonpayment being explicitly limited to forfeiture of his membership. While defendant's receipt of the premiums tendered on Spitz's behalf is consistent with an innocent motive, we cannot assume that it intended to perpetrate a fraud; and, in view of the fact that Spitz

was not at the time indebted to defendant for the amount, we are forced to construe the fact of the receipt of the premiums as evidence of an intention to reinstate the forfeited membership.     Upon no other theory was defendant entitled to receive and retain the money paid it, and having entered into an agreement for such reinstatement, and received valuable consideration therefor, it could not subsequently repudiate the obligations thus assumed. Defendant's assistant cashier testified that, in the acceptance of the premiums, and the issue of the secretary and cashier's receipt therefor, he acted outside of his authority.     This, however, considered with the presumption to the contrary as already stated, at most created a conflict of evidence, upon which plaintiff was entitled to go to the jury.     There was, besides, affirmative evidence in support of plaintiff's claim of the assistant cashier's authority.     He admitted having accounted for the moneys received by him to the defendant, and without such admission, it being his duty so to account, will be presumed to have done so, in the absence of evidence to the contrary.     Turner v. Kouwenhoven, 100 N. Y. 115, 2 N. E. Rep. 637.     The amount paid for the defaulted premiums was retained, and never offered to be returned, by defendant.     Ten days after its receipt thereof, the secretary wrote Spitz referring to the fact that there had been complaint to the effect that members did not receive notices intended for them, and requesting Spitz to inform defendant concerning the state of his insurance with the latter.     An inference from this letter is that defendant then recognized Spitz as among its members. Granted that at the time of his acceptance of the amount of the defaulted premiums defendant's cashier was without authority to bind it by an agreement for Spitz's reinstatement, defendant could, notwithstanding, adopt and ratify the act of its officer and agent. That it did so is apparent from the facts that it received and retained the amount paid as the consideration for that agreement, knowing at the time of the forfeiture of Spitz's membership, and that it subsequently recognized the membership as still in force.

Defendant's counsel contends that because, at the time of payment of the defaulted premiums, the fact was not disclosed that Spitz was then ill at the hospital, suffering from the disease which eventuated in his death, on the 9th day of the next succeeding month, Spitz was guilty of a concealment or suppression of a material fact which avoided his membership.     It should be observed, however, that reinstatement of the forfeited membership proceeded from a new agreement to which the conditions of the first agreement did not apply.     No inquiry was made at the time of the new agreement on defendant's behalf concerning the member's condition of health, and, in the absence of every intimation by defendant that it deemed his continued exemption from ill health essential or a condition precedent to the new agreement, it cannot truly be said that Spitz concealed or suppressed any fact.     It was optional with defendant to refuse the tender of the defaulted premiums, or to ratify the act of its assistant cashier, upon learning of his

acceptance of the amount, until satisfied concerning the state of health of the delinquent member; but, having waived all information on that point, it cannot subsequently avoid its obligations because the information was not voluntarily given, or upon any pretense that it would not have made the agreement had it known of the fact of the member's illness.

Defendant's claim on the trial that, at the time of his application for membership, Spitz concealed or suppressed certain material facts, was predicated of his omission to state in answer to the following inquiry, "What amounts are now insured on your life, and in what companies?" that he was at the time a member of the American Legion of Honor and of the Hillel Lodge of the Order of Free Sons of Israel, two benevolent associations, whose membership was attended by the payment of a mortuary benefit to the designated beneficiary of a deceased member; and that, in answer to a further inquiry concerning the age, condition of health, etc., of living brothers, he did not disclose that he had three maternal half-brothers. Neither of these omissions, however, can be considered a concealment or suppression, under the rule which requires that the inquiry, being in the language of the insurer, must receive the interpretation which is most favorable to the insured, (Dwight v. Insurance Co., 103 N. Y. 341, 8 N. E. Rep. 654; Darrow v. Society, 116 N. Y. 537, 22 N. E. Rep. 1093,) and the further rule that, if the answer is true and comprehensive in one proper sense of the inquiry, it cannot be successfully claimed by the insurer to be untrue or incomplete in another sense, so as to work a forfeiture, (2 Amer. & Eng. Enc. Law, p. 296; Kenyon v. Association, supra.) In popular acceptation, benevolent associations, though perhaps in some respects resembling them, are not regarded as the equivalent of life insurance companies, nor are mortuary benefits to the surviving family of a deceased member of such associations commonly deemed life insurance, in the sense in which the last-mentioned phrase is understood. Some of our business institutions confer such mortuary benefits upon the families of their deceased members; yet it would not occur to any member, except perhaps one of more than ordinary precision, in answer to an inquiry similar to the one addressed to Spitz concerning insurance on his life, to describe himself, for instance, as a member of the Produce or Stock Exchange. So with reference to the inquiry concerning Spitz's brothers. It cannot be legally assumed that the term "brother" necessarily and at all times and under all circumstances comprehends a half-brother, while even lexicographers are at variance in the matter. 2 Amer. & Eng. Enc. Law, p. 599, note 2. Precisely the question here presented was under review in Bridgman v. Assurance Co., 44 U. C. Q. B. 536, and it was there held that, because of the variance of common understanding of the term "brother" with reference to its inclusion or exclusion of a "half-brother," it was properly left to the jury to determine whether or not the insured's representation that he had but three brothers, of whom two were living, when in fact he also had four half-brothers, of

whom only one was living, was false. Since Spitz's answers, therefore, to both questions propounded to him, were true and comprehensive in at least one proper sense of the questions, it was the province of the jury to say whether he was justified in so understanding the inquiries, and whether or not the answers given involved a suppression or concealment of the matters which defendant maintains should have been disclosed. Dwight v. Insurance Co., 103 N. Y. 341, 353, 8 N. E. Rep. 654; Kenyon v. Association, supra.

One further alleged concealment is urged by defendant's counsel. It appears that in answer to an inquiry concerning his mother's age at and the cause of her death, contained in the application for membership in the defendant association, which is dated March 12, 1889, Spitz replied that she died at the age of 62, and that the cause of her death was unknown to him, and that, in answer to similiar inquiries on behalf of the American Legion of Honor in January, 1883, and the Equitable Life Assurance Society of the United States in January, 1885, he stated that his mother died of heart disease. The burden of proof of the falsity of the representation, however, was upon defendant, (Grattan v. Insurance Co., 15 Hun, 74, 78; Jones v. Insurance Co., 61 N. Y. 79, 86; Van Valkenburgh v. Insurance Co., 70 N. Y. 605,) and there was an utter absence of all evidence from which it can be inferred that Spitz had knowledge of the precise nature of his mother's ailment which terminated with her death. It does not appear that Spitz was skilled in medical science sufficient to have an opinion of his own from observation, and it may therefore be assumed that the statements of the cause of his mother's death made in 1883 and 1885 referred to no more than his belief in the matter upon information derived from others, which belief subsequent experience or information may have impaired; so that in 1889, when he stated in answer to defendant's inquiry that the cause of his mother's death was unknown to him, his answer may have been perfectly true, because of the uncertainty of his belief.

It remains only to notice the alleged misrepresentations and the breach of warranty for which defendant's counsel claimed Spitz's membership to have been avoided. In his application for membership, Spitz represented that prior to that time he had never been afflicted with palpitation, disease of the heart, dizziness, or short breath. The only evidence relied on to show the falsity of this representation is the certificate of Dr. Jackson, who had known Spitz only for the seven days immediately preceding the latter's death, and who stated it to be his opinion that the duration of Spitz's last illness was two years. Assuming that this certificate, which was among the preliminary proofs furnished to defendant, pursuant to the provisions of the contract of membership, as a condition precedent to plaintiff's right to demand payment of the mortuary benefit, may be taken prima facie as an admission against interest, the proof having been admitted in evidence on plaintiff's offer, such can only be its effect provided the accuracy of its contents has

not been disclaimed.    Goldschmidt v. Insurance Co., 102 N. Y. 486, 492, 7 N. E. Rep. 408.    Reference need only be had to plaintiff's affidavit, which is among the preliminary proofs in evidence, and attached to Dr. Jackson's certificate, to show that the statements of the latter, in so far as they may tend to disprove the truth of Spitz's representation, are amply and emphatically denied.    Defendant, in this respect, therefore, must be deemed to have failed in its proof.

Next it was claimed that Spitz misrepresented the facts in his answers to the following questions:

"Question. How many times have you been confined to your room or bed from sickness during the last seven years, and from what disease?    Answer. Not once.    Q. Give the names of physicians and their addresses who then attended you.    A. Had none.    Q. Name and residence of your usual medical attendant.    A. Have none."

No other evidence was adduced, and none is claimed, from which the untruth of the answers is apparent, other than plaintiff's admission that during the five years last preceding his death her husband consulted Drs. Schraum and Arcularius.    Dr. Arcularius, however, testified that he had never been consulted by or prescribed for Spitz, while Dr. Schraum's testimony is to the effect that he was once called upon by Spitz, and asked to prescribe for an "attack of indigestion."    It is a mere pretense, therefore, not meriting discussion, that it conclusively appeared on the trial that Spitz's last-mentioned answers were false.

Lastly, Spitz represented that his father died of pneumonia at 55 years of age, whereas it appeared in evidence, from his representations to the American Legion of Honor, that his father's death was due to Bright's disease, and occurred when he was 54 years old.    It is apparent, however, that the statements concerning his father's age at death were mere approximations, and so understood, and in that sense it may be true that his father was both 54 and 55 years of age, being past 54 and not yet having attained 55.    It may be equally true that the father died of pneumonia and of Bright's disease, and the contrary cannot be assumed. The burden rested upon defendant to show it by evidence, of which none was attempted to be adduced.    Pathological inquiry tends to demonstrate that there are many diseases to which mankind is subject which develop as specific resultants acute functional disorders of the human organism, the latter being the immediate, and the former the remote, cause of death.    It does not therefore involve a contradiction to attribute death to both the general and the specific causes.    But, however that may be, we cannot assume his statement to defendant to have been untrue because Spitz at other times attributed his father's death to a different cause.    It does not follow that the last-mentioned statements were true.

The foregoing considerations necessarily lead to the conclusion that it was error to dismiss the complaint.    The judgment appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.