. EVA P. COOLEDGE v. CONTINENTAL INS. CO.

JANUARY TERM, 1894.

*Exceptions.   Reference to stenographic transcript.   Policy of insurance.   What conditions must be stated in declaration.  When rendered void by foreclosure proceedings.*

1.   If the stenographic transcript is referred to for the purpose of showing what exception was taken to the testimony of a witness, and it appears from such transcript that the question made in supreme court was not raised in the court below, it will not be considered.

2.   At law a writing cannot be referred to and made a part of the declaration, and such a reference adds nothing to the other allegations.

3.   In declaring upon a contract containing an exception or qualification, the exception or qualification must be set forth, and a failure to do so will constitute a variance.

4.   A declaration upon a policy of insurance promising to insure the plaintiff against loss "except as hereinafter provided," must state the excepted instances.

5.   So if the policy is to insure personal property contained in a certain building, it is a variance to declare upon a promise to insure the property generally without reference to its location.

6.   Also to allege an absolute promise to pay the loss, without stating any time of payment, when by the terms of the policy it was not payable until sixty days after proofs of loss.

7.   But the conditions and stipulations in the policy which are distinct and collateral and do not qualify the promise need not be stated.

8.  The policy provided that it should be void if foreclosure pro-
    ceedings were commenced with the knowledge of the
    assured.   *Held*, that the policy would not be rendered
    void by the pendency of such proceedings at the time of its
    issue.

Assumpsit upon a policy of fire insurance.   Plea, the
general issue.   Trial by jury at the June term, 1893, Ben-
nington county, THOMPSON, J., presiding.   Verdict and
judgment for the plaintiff.   The defendant excepts.

The plaintiff called her husband, F. H. Cooledge, as a
witness, and the exceptions stated that "against the objection
and exception of the defendant, the court allowed him to
testify that he was the agent of his wife, the plaintiff, in the
purchasing of goods and carrying on the business at the store
insured; that the schedules attached to the proofs of loss
were correct as to items, and that said items were correct as
to price."

Further on the exceptions stated that "as bearing upon the
admissibility of the evidence aforesaid, and as showing the
exceptions by defendant as actually taken on trial to the ad-
mission of their testimony, the testimony of F. H. Cooledge
(and others) is referred to."

The stenographic transcript showed that the testimony of
Mr. Cooledge, in the respects mentioned, was objected to,
and was received under the exception of the defendant; but
further showed that the defendant did not object to the testi-
mony upon the ground that the agency of the husband could
not be proved by his own testimony, but did place its objec-
tion to said testimony upon other grounds.

In the opening of her case the plaintiff offered in evidence
a policy of insurance issued to her by the defendant com-
pany.   The defendant objected to the admission of this pol-
icy for the reason that there was a variance between the con-
tract set forth in it and the contract declared upon in the
plaintiff's declaration.   This objection was overruled and

the policy was admitted, subject to the exception of the defendant.

The material part of the plaintiff's declaration was as follows :

"In a plea of the case for that whereas the plaintiff on the second day of January, A. D. 1891, at Arlington, in the. county of Bennington aforesaid, was the owner of one two-story frame tin roofed building, occupied for tin shop, office and machine shop, situate in said Arlington, and then was the owner of stoves, tinware, and such other merchandise as is usually kept in a tin shop and hardware store, and of furniture, fixtures, tools and machinery, all then kept and located in said building, situated and standing upon certain land of the plaintiff, and all of the value of more than eighteen hundred dollars.

"That said defendant was then, and ever since has been, and still is, a corporation organized and existing under the laws of the State of New York, and on said twenty-second day of January, A. D. 1891, had a license, in force, issued to it under, and by virtue of, and pursuant to the provisions of the laws of the State of Vermont, authorizing it to insure property against loss by fire, and transact insurance business in said each named state. That on the second day of January, A. D. 1891, said land of the plaintiff, upon which said building was situated, and said building was subject to a mortgage of five hundred dollars, with interest thereon for less than one year which had by the plaintiff, before said second day of January, A. D. 1891, been executed to Ernest E. Andrew, which said mortgage was on said second day of January, A. D. 1891, due and owing to the estate of said Andrew, he having deceased before that date.

"That on said second day of January, A. D. 1891, at Arlington aforesaid, the plaintiff made application to the defendant for insurance against loss by fire upon said building, and all said personal property, for the benefit of the plaintiff, and for the benefit of the said mortgage debt and. the holder thereof.

"That thereupon, on said second day of January, A. D. 1891, the defendant made and delivered to the plaintiff its written contract and policy of insurance, and therein and thereby, in consideration of the sum of twenty-six and

twenty-five one-hundredths dollars to it in hand paid, by the plaintiff, did insure the plaintiff for the term of one year from said second day of January, A. D. 1891, at noon, to the second day of January, A. D. 1892, at noon, against all direct loss or damage by fire upon or to said building and said personal property to an amount not exceeding fifteen hundred dollars, subdivided and separated into items in said contract of insurance as follows :

"Upon her two-story frame tin roofed building, occupied for tin shop, office and machine shop, situate in said Arlington, the sum of eight hundred dollars.

"Upon her stock of stoves, tinware, and such other merchandise as is usually kept in a tin shop and hardware store therein, five hundred dollars.

"Upon her furniture, fixtures, tools and machinery therein, two hundred dollars, with loss, if any, payable to mortgagee as interest may appear, and in case of loss or damage thereto by fire within said term therein, and thereby undertake and promise to pay, and indemnify the plaintiff for such loss or damage to an amount not exceeding the said sum for which each item of property was so respectively insured, all which will more fully and at length appear from said original contract and policy of insurance, now ready here in court to be produced ; that plaintiff on her part faithfully hath kept, performed and observed each, every, and all of the conditions of said contract, by her to be kept, observed and performed.

"That upon the sixteenth day of June, A. D. 1891, and while said policy was in force, said building then being occupied by the plaintiff, and all said described personal property therein, mentioned and enumerated in said contract of insurance, all then being owned by the plaintiff, said building then being subject to said mortgage, were without the fault of the plaintiff, wholly consumed and destroyed by fire, and thereby wholly lost to the plaintiff at Arlington aforesaid, and to the direct damage and loss of the plaintiff more than fifteen hundred dollars as follows, viz. :   Upon said first item of property one thousand fifty dollars, upon said second item five hundred seventeen dollars, and upon said third item three hundred fifty-seven dollars.   That immediately after said fire the plaintiff, to wit, on the seventeenth day of June, A. D. 1891, gave notice in writing to

said defendant of such loss, and within sixty days after said fire rendered a written statement to the defendant, stating therein the knowledge and belief of the plaintiff as to the time and origin of said fire; the interest of the insured and all others in the property; the cash value of each item thereof, the amount of loss thereon; stating all encumbrances thereon; that there was no insurance on said property except that of the defendant; containing a description of all the description of said property as described in the said policy of the defendant; stating any changes in the title, use, occupation, location, possession, or exposure of said property since the issuing of said policy of defendant; by whom and for what purpose the said building, and the several parts thereof, were occupied at the time of said fire; all signed and sworn to by the plaintiff.

"That more than sixty days have now elapsed since said notice and sworn statement so was furnished to said defendant.

"That thereupon the said defendant wholly neglected and refused to ascertain, or to attempt to ascertain, the amount of said loss and damage to the plaintiff as said policy provided it should do, but alleged, claimed, and pretended to the plaintiff that said contract of insurance was wholly null and void, and of no binding force or effect upon it, and then did, and ever since has, and still does, wholly neglect and refuse to pay to or indemnify the plaintiff for the said loss and damage suffered and sustained by her by reason of the said fire, as in and by said contract of insurance it had promised and agreed to do."

The following was the policy of insurance offered in evidence:

"The Continental Insurance Company, of the City of New York, in consideration of the stipulations herein named and of twenty-six and twenty-five one-hundredths dollars premium does insure Eva P. Cooledge for the term of one year from the second day of January, 1891, at noon, to the second day of January, 1892, at noon, against all direct loss or damage by fire except as hereinafter provided, to an amount not exceeding fifteen hundred dollars, to the following described property while located and contained as described herein, and not elsewhere, to wit:

"$800 on her two-story frame tin roofed building, occu-

pied for tin shop, office and machine shop, situate in Arlington, Vt.

"$500 on stock of stoves, tinware, and such other merchandise as is usually kept in a tin shop and hardware store, therein.

"$200 on furniture, fixtures, tools and machinery therein. Loss, if any, payable to mortgagee, as interest may appear.

"$1,500.                One year,                $26.25.

"To attach to policy No. 1320, Continental Ins. Co., of New York.

"Rutland, Vt., Agency.

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality ; said ascertainment of estimate shall be made by the insured and this company, or, if they differ, then by appraisers as hereinafter provided ; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy.   It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value; and also to repair, rebuild; or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do ; but there can be no abandonment to this company of the property described.

"This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof ; or if the interest of the insured in the property be not truly stated herein ; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

"This entire policy, unless otherwise provided by agree-

ment indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or the subject of insurance be a manufacturing establishment, and it be operated in whole or in part at night later than ten o'clock, or if it cease to be operated for more than ten consecutive days; or if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering, or repairing the within described premises for more than fifteen days at any one time; or if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage; or if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed; or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss: or if illuminating gas or vapor be generated in the described building (or adjacent thereto) for use therein; or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises, benzine, benzole, dynamite, ether, fireworks, gasolene, greek fire, gunpowder, exceeding twenty-five pounds in quantity, naphtha, nitro-glycerine, or other explosives, phosphorus, or petroleum or any of its products of greater inflamability than kerosene oil of the United States standard, (which last may be used for lights and kept for sale according to law but in quantities not exceeding five barrels, provided it be drawn and lamps filled by daylight or at a distance not less than ten feet from artificial light); or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days.

"This company shall not be liable for loss caused directly

or indirectly by invasion, insurrection, riot, civil war or commotion, or military or usurped power, or by order of any civil authority ; or by theft; or by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire or when the property is endangered by fire in neighboring premises ; or (unless fire ensues, and in that event for the damage by fire only) by explosion of any kind, or lightning ; but liability for direct damage by lightning may be assumed by specific agreement hereon.

"If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such buildings or its contents shall immediately cease.

"This company shall not be liable for loss to accounts, bills, currency, deeds, evidences of debt, money, notes, or securities ; nor unless liability is specifically assumed hereon, for loss to awnings, bullion, cast, curiosities, drawings, dies, implements, jewels, manuscripts, medals, models, patterns, pictures, scientific apparatus, signs, store or office furniture or fixtures, sculpture, tools or property held on storage for repairs ; nor, beyond the actual value destroyed by fire, for loss occasioned by ordinance or law regulating construction or repairs of buildings, or by interruption of business, manufacturing processes, or otherwise ; nor for any greater proportion of the value of plate glass, frescoes, and decorations than that which this policy shall bear to the whole insurance on the building described.

"If an application, survey, plan, or description of property be referred to in this policy it shall be a part of this contract and a warranty by the insured.

"In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company.

"This policy may by a renewal be continued under the original stipulations, in consideration of premium for the renewed term, provided that any increase of hazard must be made known to this company at the time of renewal of this policy shall be void.

"This policy shall be canceled at any time at the request of the insured ; or by the company, by giving five days' notice of such cancellation.   If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall

be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the pro rata premium.

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto.

"If property covered by this policy is so endangered by fire as to require removal to a place of safety, and is so removed, that part of this policy in excess of its proportion of any loss and of the value of property remaining in the original location shall, for the ensuing five days only, cover the property so removed in the new location; if removed to more than one location, such excess of this policy shall cover therein for such five days in the proportion that the value in any one such new location bears to the value in all such new locations; but this company shall not, in any case of removal, whether to one or more locations, be liable beyond the proportion that the amount hereby insured shall bear to the total insurance on the whole property at the time of fire, whether the same cover in new location or not.

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the

title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire; and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has examined the circumstances, and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify.

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively suggested by him, and shall bear equally the expense of the appraisal and umpire.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company,

including an award by appraisers when appraisers have been required.

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto. Liability for re-insurance shall be as specifically agreed hereon.

"If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment.

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire.

"Wherever in this policy the word 'insured' occurs it shall be held to include the legal representation of the insured, and wherever the word 'loss' occurs it shall be deemed equivalent of 'loss or damage.'

"If this policy be made by a mutual or other company having special regulations lawfully applicable to its organization, membership, policies or contracts of insurance, such regulations shall apply to and form a part of this policy as the same may be written or printed upon, attached, or appended hereto.

"'Provisions required by law to be stated in this policy.' This policy is a stock policy, and issued under and in pursuance of Chapter 189, of the Laws of the State of New York, passed April 16, 1874, and amended by chapter 282, passed May 21, 1878, entitled 'An act to provide security against extraordinary conflagrations, and for the creation of safety funds by fire insurance companies.'

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance unaer this policy exist or be claimed by the insured unless so written or attached."

*J. C. Baker* for the defendant.

The contract stated in the plaintiff's declaration is an absolute one. That set forth in the policy of insurance is a conditional one; hence there is a fatal variance between the declaration and the evidence. *Gotlieb* v. *Leach*, 40 Vt. 278; 1 Chitty, Pl., (16th Am. Ed.) 316; *Hitt* v. *Campbell*, 6 Me. 109; *Whitaker* v. *Smith*, 4 Pick. 83; *Lown* v. *Winters*, 7 Conn. 263; *Jones* v. *Cooper*, 2 Aik. 54; *Bank* v. *Downer*, 27 Vt. 182; *Mann* v. *Burchard*, 40 Vt. 326.

The pendency of the foreclosure proceedings rendered the policy void. May, Ins , (2d Ed.) 250; *McIntire* v. *Ins. Co.*, 102 Mass. 230.

*O. M. Barber* for the plaintiff.

It is sufficient if the declaration apprises the defendant of the nature of the action, and enables him by reference to the record of the cause itself to plead the judgment in bar to a second suit for the same cause of action. *Derragon* v. *Rutland*, 58 Vt. 130.

Courts do not favor objections upon the ground of variance; certainly not where there can have been no misap-

prehension upon the part of the defendant. *Vail* v. *Strong*, 10 Vt. 460; *Hadley* v. *Bordo*, 62 Vt. 287; *Ammel* v. *Noonah*, 50 Vt. 406.

If it is to be held necessary to set forth in a declaration all the manifold conditions in these policies of fire insurance and further aver the performance of those conditions, certainly a long step backward has been taken. *Tripp* v. *Vt. Life Ins. Co.*, 55 Vt. 100; 1 Chitty, Pl., (5th Am. Ed.) 269; 2 May, Ins., s. 589.

The policy would only be rendered void by foreclosure proceedings which were begun after its issuance. Words in an insurance policy are to be construed most favorably towards the insured. *Brink* v. *Mechanics' Ins. Co.*, 49 Vt. 457; *Mosely* v. *Vt. Mut. Ins. Co.*, 55 Vt. 142, and cases therein cited; *Findeisen* v. *Ins. Co.*, 57 Vt. 520; *Carson* v. *Jersey City Ins. Co.*, 14 Vroom 300; 1 May, Ins., s. 175.

TAFT, J.   I.   It is stated in the record that, under objection and exception, the plaintiff's husband testified that he was the agent of his wife. It is insisted this was error; that it was necessary before he could testify, to establish his agency by other testimony than his own, according to the rule stated in *Sanborn* v. *Cole*, 63 Vt. 590. As showing the exception, the testimony is referred to, and upon an examination of it, it appears that the question was not made upon the trial. Therefore it is not before us.

II.   The defendant claims there was a variance in three respects, between the contract offered in proof and that set forth in the declaration, and that the court erred in admitting the contract in evidence. The plaintiff in setting forth her contract alleges the making and delivery of it by the defendant, and that the defendant therein and thereby in consideration of twenty-six and twenty-five one-hundredths dollars to it paid, did insure the plaintiff upon a tin shop building and merchandise therein, for one year, expiring at

noon, January 2, 1892, against all direct loss or damage by fire upon or to the property named, to an amount not exceeding fifteen hundred dollars, describing the property, its subdivisions, and the amount insured on each item, with loss, if any, payable to a mortgagee, and in case of loss or damage by fire thereto did promise to pay such loss or damage, to an amount not exceeding such sum for which each item of property was so respectively insured, and further alleging "all which will more fully and at length appear from said original policy of insurance now ready here in court to be produced; and a performance on her part of all the conditions of the policy, by her to be kept, observed, and performed." The allegation that the facts set forth will more fully and at length appear from the policy ready in court to be produced, etc.; adds no force to the declaration for, as was said by the court in *Estes* v. *Whipple*, 12 Vt. 373, the writing declared upon "cannot be referred to and so made a part of the declaration, as is done in chancery." The questions of variance were raised and passed upon in the county court, and so are properly before us under R. L., s. 1391.

*a.* The contract is declared upon as absolute and unconditional; it is alleged that by it the defendant did insure the plaintiff against all direct loss or damage by fire upon or to the property, etc. The contract in proof insures "against all direct loss or damage by fire, *except as hereinafter provided;*" and there are subsequent stipulations which provide that in certain contingencies the policy shall be void, such as loss caused by riot, etc. By the very terms of the contract it is conditional; it insures the plaintiff only in case the loss does not occur from the excepted causes; a contract to insure, without limitation, is not a contract to insure only in certain cases.

*b.* In another respect the contract in proof is a conditional or qualified one. The declaration is upon a contract

to insure the tin shop building and its contents. The company would be liable if the property burned, situated as described when the policy was issued, and it might be liable in case of loss if the building was located elsewhere and the personal property contained in some other building. *Pelly* v. *Governor, etc.*, 1 Bur. 341; *Lyons* v. *Prov. Wash. Ins. Co.*, 14 R. I. 109. The contract in proof insured the property "while located and contained as described herein, and not elsewhere." This latter clause qualifies the contract, making it conditional.

In the two respects named the contract was a qualified or conditional one. In declaring upon a contract, if it contains an exception or provision qualifying the defendant's liability, the exception or proviso should be stated. An omission to do so creates a variance which is necessarily fatal. Bennett, J., in *Woodstock Bank* v. *Downer*, 27 Vt. 482, speaking of a clause in an agreement says, "It is a modification of the contract itself, and should have been set out in the declaration." Chitty says in his Pl., p. 314: "The omission of any part of the contract which materially qualifies and alters the legal nature of the promise which is alleged to have been broken will be fatal." In *Vavasour* v. *Ormrod*, 6 B. & C. 430, Lord Tenderden, C. J., says, "The plaintiff ought in his declaration to have stated the reservation and the exception, and if he state it as an absolute unconditional stipulation without noticing the exception, it will be a variance." While it is true that a question of variance sometimes does not affect the result of a trial, you cannot disregard them without, as Peck, J., in *Gotlieb* v. *Leach*, 40 Vt. 278, says, "violating the principles of pleading and evidence." *Ammel* v. *Noonan*, 50 Vt. 406, cited by plaintiff, does not aid her. It was held in that case that it was necessary to set forth in the declaration only the particular promise or part of the agreement for the breach of which suit was brought, and that there was no variance if the

promise alleged in the declaration and the promise of the defendant to pay the debt which the plaintiff was seeking to recover, the one proved, were identical, although the defendant at the time of the promise promised to pay another debt to a third party.

In the case at bar the promise to insure, etc., does not contain the exception or proviso in words, but refers to it, reading "except as hereinafter provided." In such case it has been ruled that when the covenant or clause, although it does not contain the exception or proviso, refers to it by such words as "except as hereinafter excepted," the exception or proviso must be stated in the declaration, for "*verba relatæ inesse videntur.*" Heard's Civ. Prec. 16 ; *Vavasour* v. *Ormrod*, 6 B. & C. 430.

Included in the contract and following the promise of the defendant to insure, etc., are many stipulations and provisions relating to the rights of the parties, making the policy in some cases void, giving directions in case of loss, etc. The counsel for the defendant has ably argued that these provisions should be alleged and set forth in the declaration. We think in this he is in error. The promise of the defendant as made, whether absolute or conditional, must be accurately stated, but it is by no means necessary that parts of the contract should be stated which are distinct and collateral provisions, or, respect only the liquidation of damages under particular circumstances, without extending to absolve the defendant from responsibility. Ch. Pl. 314 ; *Clarke* v. *Gray*, 6 East 658 :

"If the covenant or clause in an agreement is absolute in itself, without any exception or proviso, nor reference to any, it may be stated as an absolute contract, although in a distinct part of the instrument there is a proviso defeating or qualifying it under certain circumstances ; such a proviso is in the nature of a defeasance, and must be set up, if the facts permit it, by the other side."

Bennett, J., in *Woodstock Bank* v. *Downer*, 27 Vt. 482,

speaks of provisions in an agreement as "matter in discharge of the contract which may be omitted in the declaration, and to be treated as matters of defence."

Of this class of cases *Tripp* v. *Vermont Life Ins Co.*, 55 Vt. 100, is in point. This latter case is cited by the plaintiff's counsel as sustaining the sufficiency of the declaration in the case at bar. The promise in that case as alleged and proven was an absolute one, and there was no necessity of alleging the collateral stipulations of the contract, and the remark of the court that the allegation "that the plaintiff kept and performed all and singular the conditions by him to be kept and performed was sufficient" would seem to be superfluous, in view of the fact that it was unnecessary to allege any conditions; and when, in fact, none were alleged. The rule substantially covering the whole subject is tersely stated by Lord Tenderden, C. J., in the case above cited of *Vavasour* v. *Ormrod*, 6 B. & C. 430:

"If an act of parliament or a private instrument contain in it first, a general clause, and afterwards a separate and distinct clause, which has the effect of taking out of the general clause something which would otherwise be included in it, a party relying upon the general clause, in pleading, may set out that clause only, without noticing the separate and distinct clause which operates as an exception. But if the exception itself be incorporated in the general clause, then the party relying upon it (the general clause) must in pleading state it with the exception, and if he state it as containing an absolute unconditional stipulation without noticing the exception, it will be a variance."

The conditional or qualifying clauses in the plaintiff's policy being incorporated in the general clause of the contract should have been alleged, while it was not necessary to set out the collateral conditions which were separate and distinct, except so far as they may have been referred to by the phrase "except as hereinafter provided."

We do not wish to be understood that a condition prece-

dent need not be alleged in whatever part of the contract it may be placed.

c. The defendant raises another question of variance between the declaration and proof. The plaintiff alleges that by the contract the defendant, in case of loss, did therein and thereby undertake and promise to pay and indemnify the plaintiff for such loss or damage, to the amount not exceeding the said sum for which each item of property was so respectively insured. A general promise to pay, without limitation as to time, is a promise to pay forthwith, within a reasonable time, and such must be the construction of the promise alleged.

This is the only allegation in the declaration of the defendant's promise in respect to the time of payment. The contract in evidence provided that the insured should "give immediate notice of any loss," and that the "loss or damage should be ascertained or estimated according to the actual cash value," and that "said ascertainment or estimate should be made by the parties, or, if they differed by appraisers," etc., and "the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy." There is a material difference between the contract declared upon and the one offered in evidence. Under the one declared upon it would be the duty of the defendant in case of loss to pay the same forthwith within a reasonable time. Under the one offered in evidence the loss would not be payable until sixty days after due notice, ascertainment, estimate, and proof of loss in the manner provided by the policy. The case is similar to Clark v. Todd, 1 D. C. 213, in which the court say:

"The plaintiff has declared on a contract, by which the defendant promised to deliver to the plaintiff a certain quantity

of cloth, that is, according to the legal effect of the contract, to deliver the cloth to the plaintiff, at his, the plaintiff's place of abode; the contract proved is for the delivery of the cloth at the defendant's factory in Poultney, the variance is fatal."

A non-suit was entered.

There is a substantial difference between the contract alleged and the contract proven. It is clear that the defendant was not liable to pay any loss until it had been ascertained and sixty days had elapsed, or until he had refused to ascertain the amount in the manner provided in the policy. Such ascertainment and the lapse of sixty days, therefore, was a condition precedent to the payment; and if the performance of a contract depends upon some act to be done by either party or any other event, the plaintiff must aver the fulfilment of such condition precedent.   Ch. Pl., 321.   If the obligation of the defendant to perform its contract depends upon an event which will not otherwise appear from the declaration to have occurred, an averment of such event is essential to a logical statement of the cause of action; such is the performance of a condition precedent. The defendant, by the contract in evidence, promised to pay in sixty days after the ascertainment and proof of loss, and was under no liability until that time expired, or, there was a waiver of the proofs and time, or, it was estopped by its conduct from making that claim.   Such a provision is a condition precedent.   The time when the defendant promised to pay is not alleged in the declaration.   It would be its duty under such a contract to pay forthwith.   It is a substantial part of the contract.   That the pleader regards it as material is evident from the fact that he sets forth that the loss or damage was ascertained and proofs of loss furnished in the manner required by the contract in proof, and that sixty days had elapsed.   This would be an unnecessary allegation if the contract was like the one described in the declaration; but this does not cure the misdescription of the

contract in a matter so material as the time, when the loss should be paid.

The defendant insists that the policy was void by reason of the foreclosure proceedings.    The decree of foreclosure was obtained in June, 1890, and was running when the policy was dated in January, 1891; the decree expired June 16, 1891.    This claim is based upon the clause in the policy which reads, "If with knowledge of the insured foreclosure proceedings be commenced, by virtue of any mortgage, *    *    *    the policy shall be void."    We think this clause refers to foreclosure proceedings begun after the date of the policy, and not to those already commenced.    In case of a policy with like provision, the applicant stated in his application that no foreclosure proceedings had been begun, but afterwards and before the policy was dated, such proceedings were commenced, and it was held the company was bound.    *Day* v. *Hawkeye Ins. Co.*, 72 Iowa 597, 17 Ins. Law Jour. 143; and see *Phenix Ins. Co.* v. *Union M. Life Ins. Co.*, 101 Ind. 392, 14 Ins. Law Jour. 461.

That the policy was void by reason of any concealment or misrepresentation of material facts is a question not raised by the record, and therefore is not considered.

*Judgment reversed and cause remanded.*