CASE 90—ACTION BY LESSIE M. MILWARD AGAINST THE AETNA LIFE
INS. CO. ON A POLICY INSURING HER HUSBAND AGAINST ACCIDENT-
AL DEATH.—SEPTEMBER 30.

# Aetna Life Insurance Co. v. Milward.

APPEAL FROM FAYETTE CIRCUIT COURT—WATTS PARKER, CIRRUIT
JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

ACCIDENT—INSURANCE—ACTION ON POLICY—EVIDENCE OF ACCIDENT—
PETITION—CORONER'S VERDICT—PROOFS OF DEATH—SUICIDE.

1. Evidence in an action on an accident policy held sufficient
   in view of the presumption against suicide, to sustain a find-
   ing that death was caused by accident.
2. The petition in an action on an accident policy alleging that in-
   sured was injured on a certain day by a gunshot wound, and
   came to his death therefrom on that day, and that the wound was
   accidental, external, and violent, and that the death resulting
   from it was due solely to external, violent, and accidental means,
   without negativing the many conditions of the policy excusing
   the insurer, in whole or part, from paying the principal sum,
   which are matters of defense, states a cause of action on the policy
   for the principal sum.
3. In an action on an accident policy, the verdict of the coroner's
   jury is not admissible on the issue of the cause of death.
4. The proofs of death of one insured against accident, required to
   be furnished the insurer, need not show more as to the death
   having been caused by accident than is necessary to establish
   *prima facie* case in the action on the policy.

BRECKINRIDGE & SHELBY, FOR APPELLANT.

## POINTS AND AUTHORITIES.

1 In an action to recover for death under an accident insur-
ance policy the burden is upon the plaintiff to prove that the
death of the insured was caused by accidental means, even though
the defense claims that it was due to suicide Whitlatch v.
Fidelity and Casualty Co., 149 N. Y., 45 (43 N. E., 405); Fidelity
and Casualty Co. v. Weise, 182 Ill., 496 (55 N. E., 540); Taylor

Aetna Life Ins. Co. v. Milward.

v. Pacific Mut. Life Insurance Co., 110 Iowa, 621 (82 N. W., 326);
Aetna Life Ins. Co. v. Vandecar, 86 Fed., 286; National Masonic
Accident Ass. v. Shryock, 73 Fed., 774; Insurance Co. v. Mc-
Conkey, 127 U. S., 661 (32 L. Ed., 308); Laessig v. Travelers'
Protective Association, 169, Mo., 272 (69 S. W., 469); Aetna Life
Ins. Co. v. Kaiser, 24 Ky. Law Rep., 2454 (74 S. W., 203.)

2. A plaintiff does not succeed in successfully carrying the
burden of proof where the case as made by his testimony is
equally consistent with his own theory and that of the defend-
ant. Hughes v. Cincinnati, &c., R. R. Co., 91 Ky., 526; Wintuska
v. L. & N. R. R. Co, 14 Ky. Law Rep., 579; Louisville Gas Co. v.
Kaufman, &c., 20 Id., 1069; L. & N. R. R. Co. v. Wathen, 22 Id.,
85; Hughes v. L. & N. R. R. Co., 23 Id., 2288; Hurt v. L. & N. R.
R. Co., 25 Id., 759; Merrett v. Preferred Masonic, &c., Associa-
tion, 98 Mich., 338 (57 N. W., 169); Carnes v. Iowa Traveling
Men's Association, 106 Iowa, 281 (76 N. W., 683.)

3. The plaintiff failed to make out her case under the fore-
going rules, and the peremptory instruction asked for by the
defendant should have been given.

4. The peremptory instruction should have been given upon
the further ground that plaintiff had not, as required by the
policy, furnished affirmative proof that the death of the insured
was the proximate result of accidental means.

5. Even if defendant was not entitled to a peremptory instruc-
tion the verdict should be set aside as flagrantly contrary to the
evidence; because the rule requiring a submission to the jury if
there be a scintilla of evidence does not mean that a verdict may
be sustained upon a mere scintilla. Hurt v. L. & N. R. Co., 25
Ky. Law Rep., 759; Civil Code, sec. 341.

6. The policy stipulated for different payments in the event
of accidental death under different prescribed conditions, and
also stipulated that even for accidental death under certain con-
ditions there should be no liability. The plaintiff's petition was,
therefore, fatally defective by reason of its failure to allege
under which of these various prescribed conditions the alleged
accidental death occurred. American Accident Ins. Co. v. Carson,
99 Ky., 447.

7. The coroner's inquest was competent testimony upon the
issue of suicide. Starkie on Evidence, side pages, 404, 288-9 and
405-7; Greenleaf on Evidence, sec. 556; U. S. Life Ins. Co. v.
Kielgast, 129 Ill., 557 (6 L. R. A, 65, 22 N. E., 467.)

8. The lower court erred in permitting plaintiff, after the con-
clusion of all the evidence and the request for instructions, to
file an amended reply, changing a substantial issue.

9. The lower court erred, after permitting said amendment to

be filed, in overruling defendant's motion to set aside the swearing of the jury and continue the case.

10. Errors committed by the lower court in giving and refusing instructions.

11. Appellant was entitled to a new trial upon the ground of newly discovered evidence.

C. J. BRONSTON AND JOHN R. ALLEN, FOR APPELLEE.

1. We submit that the only facts necessary to be stated in the petition to entitle the plaintiff to recover upon the face of the policy, which precedes a long list of conditions and exceptions attached thereto, are as follows:

(1.) The execution and delivery of the contract of insurance, and the payment of the consideration expressed therein.

(2.) That the policy was in full force and all premiums paid at the time of the death or injury of the insured.

(3.) That the death resulted within ninety days from the time of the injury.

(4.) That the injury, and consequent death, was the sole result of external, violent and accidental means.

(5.) That proper notice of death, and the cause thereof, with accompaning proof, was made to the person and at the place named in the policy.

2. Where there is any evidence tending to support the allegations of the petition, the court can not properly peremptorily instruct the jury to find for the defendant. A jury selected from all classes of business, and of different ages and experience, are better prepared to make fair deductions from a state of undisputed facts than even the judges on the bench.

3. A coroner's inquest, and the verdict of the jury thereon is not competent evidence to show whether or not the death of the insured was the result of suicide.

4. A new trial was properly refused by the court, (1) because the evidence offered was merely cumulative, and (2) because diligence was not shown in the effort to procure it on the trial.

## LIST OF AUTHORITIES

Enclycopedia of Pleading & Practice, vol. 11, p. 418; Encyclopoedia of Law & Procedure, vol. 1, p. 285; Richards v. The Travellers' Insurance Co., 23, American State Reports, 457; 1 Am. & Eng. Ency. of Law, 272; Standard Oil Co. v. Eiler, 22 Ky. Law Rep., 1643; Aetna Life Ins. Co. v. Kaiser, 24 Ky. Law Rep., 2456; May on Insurance, sec. 325; Jones on the Law of Evi-

dence, p. 379; Supreme Lodge v. Beck, 94 Fed., 752; Home Benefit Association v. Sargent, 142 U. S., 697; Phillips vb. Equitable Life Ins. Co., 26 La. A. R., 404; Campbell v. The Fidelity & Casualty Co., 22 Ky. Law Rep., 1304; Hutchcraft's Exr. v. The Travellers' Insurance Co., 87 Ky., 302; American Accident Co. v. Reigart, 94 Ky., 549; May on Insurance, 3d Ed., sec. 175; American Accident Co. v. Carson, 99 Ky., 445; Fidelity & Casualty Co. v. Johnson, 30 L. R. A., 206; Travellers Insurance Co. v. Clark, 22 Ky. Law Rep., 902; Miller v. Insurance Co., 20 L. R. A., 765; Insurance Co. v. Randolph, 78 Fed. Rep., 754; Burkhardt v. Inscrance Co., 102 Pa. State, 263; ' National Bank v. Insurance Co., 95 U. S., 673; Thompson v. Insurance Co., 136 U. S., 287; Insurance Co. v. McConkey, 177 U. S., 661, Indemnity Co. v. Dorgan, 58 Fed. Rep., 945, Phillips on Code Pleading, sec. 340; Owensboro City Railway Co., v. Hill, 21 Ky. Law Rep., 1640.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

This is an appeal from a judgment for $5,000 in favor of the appellee (plaintiff below), as the designated beneficiary in a policy insuring her husband, Charles S. Milward, against accidental death. The defense, as made by the answer, consists of a denial that the death was the result of an accident, and a claim that it was due to suicide. The principal points of complaint presented on this appeal are that the verdict was unauthorized by the evidence, that the petition was insufficient, and that competent evidence on appellant's behalf was rejected by the trial court.

The insured was found dead from the effects of a pistol shot wound in the head. His body, partially disrobed as he had slept, was discovered lying in a small porch or entry, which was partially inclosed, at the rear of his residence. By his side were two pistols, both loaded, but in one a discharged cartridge. The shot entered his head on the left side, behind the ear, and passed through in nearly a straight line. The two pistols were lying rather to his right side. He was right handed. His domestic relations were appar-

ently pleasant, being happily married. He had also two young children. His health was good. His mercantile business was prospering satisfactorily. He was about 34 years old, and a man of good habits and character. The shot which killed him was fired about dawn November 21, 1900. It was heard by but one person, who testifies in the record. The tragedy was unseen by any witness in the case. Appellee, widow of deceased, and her two infants slept in an upstairs room, but were not aroused by the shot. There were no other evidences of violence, nor of the presence of another person at the scene of the killing. The back yard, where it occurred, had walks leading to it which were paved, and would not for that reason have shown tracks. One of the pistols probably belonged to deceased, or had recently been in his possession. It was a nickel plated Iver Johnson revolver. The other, a blued steel barrel pistol, was not identified as to its ownership. It was from the latter the fatal shot was fired. There was some evidence that the insured was a man of intense application to business, was of a nervous temperament; that he had a year or so previous to his death consulted a physician, who had advised him to take a rest on account of nervous exhaustion or depression, and that he took a vacation of two or three weeks in the Northwest. After his return the physician found him restored to health, and quit treating him. A few days before his death deceased complained of pain in the back of his head.

Appellant argues that the verdict is flagrantly against the evidence, because, it is contended, the evidence, of which the foregoing is a fair epitome, shows clearly that the death was suicide; or, in any other view of it, it fails to show that the death was caused by accidental means, and therefore there was a failure of proof on behalf of the plaintiff.

As indicated, the evidence is wholly circumstantial. It may none the less point as unerringly to a correct conclusion as if detailed by eyewitnesses. It will not do to say that in such case the jury is required to "guess" the cause. It is unlike when the circumstances do not show the cause of the occurrence, as in Louisville Gas Co. v. Kaufman, 105 Ky., 131, 48 S. W., 434, 20 Ky. Law Rep., 1069, and Hurt v. Louisville & Nashville R. R. Co., 116 Ky., 545, 76 S. W., 502, 25 Ky. Law Rep., 759. The nature of the wound shows conclusively that the cause of the death was both violent and external. The date of the occurrence is within the duration of the policy of insurance. The only remaining question was, whether it was accidental in the meaning of the contract. Aside from legal presumptions, about which the jury were not instructed in this case, though they may properly have been, we are unable to say from the evidence that the verdict is not true. It is reasonably clear, at least most probable, that if decedent had a pistol at all, it was the one, and so far as the record shows, the only one, to which he had access—the nickel plated revolver—from which the fatal shot was not fired. That it was not fired by him is indicated by the place of the wound, its entry being on the opposite side of the head from that which would have been the easiest and most natural if suicide had been done. Absence of scorching of the hair and of powder burn in sufficient quantity also negative the theory that a right handed man had placed the muzzle of the pistol where it must have been done if done by decedent to have inflicted that shot. That the pistols were found on the right side of the body seems to refute the theory that decedent, contrary to his habit and instinct of using his right hand, used his left in this act. The instantaneous effect of such a wound is to produce paralysis of

the volition.    Death was immediate, in so far as the
ability to dispose of anything in his hand was concerned.
The surrounding circumstances are not in harmony with
the view that the insured took his own life.    They tend to
show that the act was not the probable course of a sane
person who was bent upon destroying his life.    There was
no hint in the evidence of any symptom of insanity.    Circum-
stantial evidence tells the story of a past transaction by
the similitude between the things shown to have been done
and what, in the experience of mankind, has been found to
be generally the cause or result of similar occurrences.  From
these the mind deduces the most probable cause of the oc-
currence in question.    The result of this process of reason-
ing has been found to be so unvarying as to justify its adop-
tion as a rule of evidence.    The jury were authorized to apply
to the facts detailed their knowledge of human nature, and
to indulge, in aid of deduction predicated upon the estab-
lished facts, those presumptions which common experience
has established, and which therefore the law allows.    The
love of life is instinctive; self-preservation is its first, as it
is its strongest, law.    In the absence of mental derange-
ment, of any known fact calculated to unseat the judgment
and to overcome the love of life, the inquiring mind natural-
ly and properly looks for other causes of the deed when
death by violence occurs.    When all the facts are incon-
sistent with the theory of suicide, except simply that of
the dead body in the presence of its instrument, it would
be unnatural and illogical to confine the inquiry to that in-
cident, and declare the death suicide.    The act of suicide
is not only unnatural, but is highly immoral and criminal.
The presumption of law is against it; so is the presumption
of fact.    The jury ought to have given place to that presump-
tion in determining what, in the light of the evidence, was

the cause of the death. By this process they were warranted, under the evidence in this case, in saying that the death was not suicide.

Nor does the law presume that murder or other crime was committed. There was not enough evidence probably to say that murder was done. Still, the inquiry had led the jury to logically say that the death was from a cause violent and external, and not purposely self-inflicted. Such a wound, not having been inflicted with suicidal intent, was necessarily done by the decedent unintentionally, or, as the evidence indicated to be more likely, was done by some one else. As the presumption is also against crime, in the absence of evidence of the fact, the jury was not authorized to say that the wound was purposely inflicted by another. The conclusion from this state of the record inevitably follows that decedent came to his death by an unintentional —that is, an accidental—shot fired either by himself, or by some other person unknown to the jury. Nor does it matter, so far as the liability of appellant is concerned, which it was. In either event it was an accidental death, within the meaning of the policy of insurance.

2. In an action upon an accident policy of insurance it is necessary for the plaintiff to allege and prove that the insured came to his death by violent, external, and accidental means within the time covered by the policy. It is as necessary to allege and prove the last as either of the other requisites. Though appellant complains that in this case the burden was not so imposed, we think it was. The petition so charged. The court so ruled in the admission of evidence. In the instructions it was also observed. The policy of insurance declared upon contracted against injury and death through external, violent, and accidental means. It contained many provi-

sions for graduated indemnity, depending upon the nature and extent of the injury, and the calling and exposure of the insured; more to be paid in certain contingencies than in others. In a suit upon such policy, it is not necessary for the plaintiff to state that he was not suing to recover under certain clauses not relied on, or for certain injuries not received, nor to negative any of the provisions of the policy not made conditions precedent to his right to institute the suit. National Benefit Ass'n v. Bowman, 110 Ind., 355, 11 N. E., 316; Jones v. United States Mut. Acc. Ass'n, 92 Iowa, 652, 61 N. W., 485; Railway Officials, etc. v. Drummond, 56 Neb., 235, 76 N. W., 562; Whitlatch v. Fidelity, etc., Co., 71 Hun, 146, 24 N. Y., Supp., 537; Employers, etc., Corp. v. Rochelle, 13 Tex. Civ. App., 232, 35 S. W., 869; Cooledge v. Continental Ins. Co., 67 Vt., 14, 30 Atl., 798; Troy Fire Ins. Co. v. Carpenter, 4 Wis., 20; Coburn v. Travelers' Ins. Co., 145 Mass., 226, 13 N. E., 604; May on Insurance, 590.

It is enough for the plaintiff to declare upon the clause of the contract under which he deems himself entitled to recover, stating the facts showing *prima facie* such right. The conditions of the policy that would excuse the insurer from payment, or that would reduce the principal sum insured, are matters of defense. May, Insurance, 589, etc. American Accident Co. v. Carson, 99 Ky., 441, 18 R., 308, 36 S. W., 169, 34 L. R. A., 301, 59 Am. St. Rep., 473, is relied on as sustaining a contrary doctrine to that announced. That opinion, upon first reading, seems to recognize a distinction between conditions indorsed upon the back of the policy, "and therefore not necessary to be adverted to in declaring on the contract," and those upon its face. What other conditions were present "on the face of the policy" other than that of occupation the opinion does not state.

As conditions which would excuse or reduce the recovery, which are by the agreement of the parties made part of the contract whether indorsed on the back or incorporated in the face of the policy, have the same legal effect, we must conclude that the court intended by the distinction noted to require that the petition should set out a case within those that were precedent to the plaintiff's right of recovery. Such construction is the one in harmony with the weight, and indeed the whole drift of authority on this subject. In this case the petition charged that the insured was injured on November 21, 1900, by a gunshot wound, and came to his death therefrom immediately on that day; that the gunshot wound was accidental, external, and violent; and that the death resulting from it was due solely to external, violent, and accidental means. Without negativing the many conditions of the policy excusing the insurer, in whole or in part, from the principal sum insured, the petition stated fully a cause of action upon the policy for the principal sum, $5,000.

3. On the morning of the death of the insured, the coroner of Fayette county impaneled a jury to inquire into its cause. Evidence was heard, and the premises examined by the jury, five of whom signed and returned a verdict that the body examined by them was that of Charles S. Milward, who came to his death from a pistol shot wound through the brain, the pistol being fired by his own hand. One of the jury refused to join in the verdict. Appellant offered the record of the coroner's inquest as evidence on its behalf in this trial. It was rejected by the trial court, of which appellant complains.

We are of opinion that the record and the finding of the coroner's jury were irrelevant as evidence. While the coroner's inquest is a public function, made on behalf of the

Aetna Life Ins. Co. v. Milward.

State, and while a record of it is required to be made and kept, it can not, on any well grounded principle of American common law, become evidence in another inquiry or suit as to the cause of the death investigated. The business of this tribunal is by statute to collect promptly the facts concerning deaths which the coroner has reason to believe were the result of crime. Like the grand jury, it projects an *ex parte* investigation of supposed or alleged crime resulting in homicide, for the purpose of aiding in the administration of the criminal laws of the State. The accused is neither represented, nor has the right to be, at the inquiry. For even better reasons, other persons who have property interests dependent upon the cause of the death would not be allowed to participate in the hearing before the coroner's jury, with a view to establishing rights by the verdict. That tribunal is unprovided with much of the necessary machinery for conducting such inquiries. It would, it seems to us, be abhorrent to the principles of the common law, as administered in this country, that one not so represented should be bound by the finding of the coroner's jury, his rights concluded without a trial at which he could be heard —a trial "behind his back," as has been said. If such verdict be admissible as evidence, it follows from its very nature that it might alone constitute proof of the main fact, and of every essential fact in issue. It might, for example, not only show the fact of death by violent and external means within a date covered by the policy, but find also that it was accidental or was not accidental. In either event, a property right of one or the other of the litigants would be determined by a proceeding of which no notice was given to him, upon testimony not preserved, and may be wholly incompetent or insufficient, and without an opportunity to cross-examine the witnesses whose oaths es-

Aetna Life Ins. Co. v. Milward.

tablished it.   Thus he would be deprived of his property
without "a day in court," for the first verdict might be
enough, if the only evidence offered or obtainable, and the
second one would be merely a formal ratification.    If the
verdict of the coronor's jury is not binding upon the world
as a proceeding *in rem* it could not be admitted as evi-
dence on any other ground.   It might be proof of the fact
of the death of the person examined, and of the identity
of the body.   Further than that we are not prepared to
admit it.

In England the coroner is not only a judicial officer, as
well as ministerial, but his court is a court of record.   His
jurisdiction there extended far beyond the possibilities here.
The importance and use of that court may have justified
its rank in England, and their accrediting its judgments as
those of courts of record in proceedings *in rem* are usually
accorded.    Anciently when the goods of a suicide passed
to the crown, and when the property of one attainted es-
cheated to the lord, and when death resulted from misfor-
tune or negligence (until the statute of 10 Vict. 62), the
deodand was forfeited to the township for the use of the
king's almoner, the coroner's verdict and the escheator's
inquest were treated as judicial findings *in rem* and were
conclusive evidence as such, although they later came, main-
ly through the intervention of Lord Hale, to be admitted
as rebuttable evidence only.   Starkie, Ev., 289, 404.   Our
system of inquests was not designed for such purpose.
Neither the ancient prerogatives of these functionaries, nor
the presumptions attendant upon their findings, can have
a place in our jurisprudence.

Able counsel present the argument in behalf of the ad-
missibility of this evidence with much earnestness, and have
cited a number of cases from other jurisdictions in support

of their contention. In Aetna Life Ins. Co. v. Kaiser, 115 Ky., 539, 74 S. W., 203, 24 Ky. Law Rep., 2454, in disposing of an offer to introduce the coroner's inquest as evidence on the trial against the insurance company on the policy, the court said: "We are clearly of opinion that this was incompetent, and was properly rejected." As that opinion did not cite or discuss the authorities, it is assumed in argument that it was adopted not after mature consideration of the question. The leading case in America of the class relied on by appellant is United States Life Ins. Co. v. Vocke, 129 Ill., 557, 22 N. E., 467, 6 L. R. A., 65. In that case the coroner's jury had found that the insured had come to his death by a pistol shot fired by his own hand, while laboring under a fit of temporary insanity. Although a copy of the inquest was furnished to the insurance company by the beneficiary in the proof of death, the court elected to ignore that fact, and proceeded to a discussion and decision of the more difficult proposition, whether the inquest was not competent as original evidence of the manner in which the assured had died. The opinion cites a number of English cases and text writers and English statutes concerning the jurisdiction of the coroner, and the effect of verdicts rendered in his court. It was declared that this ancient office was judicial was well as ministerial, and so recognized by parliamentary acts, from which it was said the Illinois statute creating the office was not substantially different. From the similarity of the statutes, which the court held to be but declaratory of the common law, it was decided to apply the English doctrine as to the nature of the inquest. People v. Devine, 44 Cal., 452, is the only American authority discussed in the opinion as tending to support its conclusions. The question in Devine's case was whether the evidence of a witness given before the

coroner could be used to contradict the same witness when testifying about the same transaction in a trial court. The California court admitted the impeaching evidence on the ground that under their statute the coroner's court was a judicial tribunal, whose records were to be treated as other judicial records. In a later case in California (Walther v. Mutual Life Ins. Co., 65 Cal., 417, 4 Pac., 413), accompanying the proofs of death, and being a part thereof, was a copy of the coroner's inquest. These papers were all introduced by the plaintiff, but the trial court refused to consider the inquest as evidence. Upon the authority of Insurance Co. v. Newton, 22 Wall., 32, 22 L. Ed., 793, that action was reversed. It does not seem to have been regarded by the California Supreme Court that the inquest was competent otherwise than as an admission against interest made by the plaintiff. Nor was People v. Devine alluded to in that opinion. Insurance Co. v. Newton, 22 Wall., 32, 22 L. Ed., 793, discusses the admissibility of the inquest only when it was made part of the proof of death by the complainant. The court held that it then became a material statement by the plaintiff, as an admission against his interest and was relevant on behalf of the defendant on that ground. This was followed in Insurance Co. v. Higginbotham, 95 U. S., 390, 24 L. Ed., 499. In Metzradt v. Modern Brotherhood, 112 Iowa, 522, 84 N. W., 498, the issue was whether the insured had died a suicide. As to the admissibility of the verdict of the coroner's jury and its effect, the court said: "Plaintiff's counsel do not question its admissibility, and, in view of the purpose of the inquest, and the manner in which it was required to be conducted, we think it is competent evidence in such an issue as this." Its effect was declared on authority of Greenleaf on Evidence, 556, and Insurance Company v. Kielgast (Vocke) *su-*

*pra* to be not conclusive. In Knights of Honor v. Fletcher, 78 Miss., 377, 28 South., 872, 29 South., 523, also cited by appellant, the rules of the order required, as a condition precedent to the right of recovery, that in case of sudden death the certificate of the coroner would be invariably required. The proof of death was furnished, as required, including the coroner's inquest. The court decided that on that ground, as well as independent of it, the inquest was competent evidence; citing, without comment, United States Life Ins. Co. v. Vocke, *supra*; Walther v. Mut. Life Ins. Co., *supra*; and Insurance Co. v. Higginbotham, *supra,* with Fein v. Covenant Mut. Ben. Ass'n, 60 Ill. App., 274, as the authority for the conclusion. Eliminating the cases used in the foregoing citations which turned upon the peculiar phraseology of local statutes, or were bottomed on other principles, as Insurance Co. v. Newton, and the Higginbotham case, *supra,* we find the Vocke case, 129 Ill., 557, 22 N. E., 467, 6 L. R. A., 65, the origin, apparently, of the doctrine in this country for the principles for which appellant contends. The Supreme Court of Colorado, in Germania Ins. Co. v. Ross-Lewin, 24 Colo., 43, 51 Pac., 488, 65 Am. St. Rep., 215, holds to the contrary doctrine—that which is applied in this State. The Vocke case, *supra*, Pyle v. Pyle, 158 Ill., 289, 41 N. E., 999, following it, and the California case rested upon it, are analyzed and rejected. As showing the impolicy of the old English rule if attempted to be applied to insurance cases, when suicide was a controlling question, that court reasoned thus: "In case of death under suspicious circumstances, or resulting from accident, the rule permitting inquisitions to be used in evidence would result in a race and scramble to secure a favorable coroner's verdict, that would influence, and perhaps control, in case suit should be instituted against life in-

surance companies upon policies of insurance, and in case of accidents occurring as the result of negligence on the part of corporations operating railways, street car lines, mining for coal, the precious metals, etc. Law writers of late have frequently animadverted upon the carelessness with which such inquests are frequently conducted, and to allow inquisitions to be used in a suit between private parties upon a cause of action growing out of the death of the deceased, as in this case, would be to introduce an element of uncertainty into the practice which we think would be contrary to public policy, and pernicious in the extreme; and for these reasons we conclude, upon careful consideration, that the safer and better rule is to exclude such inquisitions." Citing State v. County Com'rs, 54 Md., 426; Goldschmidt v. Mutual Life Ins. Co., 102 N. Y., 486, 7 N. E., 408.

4. The petition averred the furnishing to the insurer of the proof of death within the period allotted by the policy. The allegation was: "Plaintiff states that on the 11th day of December, 1900, this plaintiff made out and presented to defendant proof of the death of the said Charles S. Milward, and that said death was the proximate and sole result of external, violent, and accidental means, to wit, a gunshot wound, and within ten days thereafter defendant acknowledged having received such proof, and that same was in due and proper form." The allegation followed substantially the requirement contained in the policy as to furnishing proof of death. The answer traversed the allegation just quoted. Appellant was ruled on plaintiff's motion to produce the proof that was furnished, which it did. The court alone considered this proof, and held it to be sufficient. The proof as furnished was substantially of the character of that given for the plaintiff before the jury on this trial,

though in more condensed form. The complaint is that it was not "affirmative proof that the death of the insured was the proximate result of accidental means." It was not intended by the parties to the contract, nor would it be permitted, to require as a condition precedent to a suit upon the policy that the complainant should furnish more and a higher grade of proof than would suffice to establish his claim in a court of law. From what has been said in an earlier part of this opinion, it will be seen that the proofs were sufficient for the purpose of recovery. The plaintiff was not bound to furnish more proof to the insurer than was necessary to establish a *prima facie* case in her behalf. Insurance Co. v. Rodel, 95 U. S., 232, 24 L. Ed., 433.

Perceiving no error prejudicial to appellant, the judgment is affirmed, with damages.

Petition for rehearing by appellant overruled.