ADOLPH GOLDSCHMIDT et al., Appellants, *v.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

In an action upon two policies of life insurance, the complaint alleged and the answer admitted the issuing of the policies, the death of the insured during the life of the policies, and that proofs of death were served upon defendant. By the policies the defendant was not liable for the amounts insured in case of the death of the insured by his own hands, "whether sane or insane." The proofs of loss were upon blanks furnished by the company, which, among other things, requested that in case of a coroner's jury the company should be furnished with the verdict of the jury. In answer to this request there was attached to the proof what purported to be a copy of the testimony taken before a coroner and of the inquisition of the jury, to the effect that the insured came to his death by suicide. The persons making the proof stated therein that they did not admit that there was any such inquest, verdict or evidence, and denied that the purported finding was true. An answer to or compliance with any such request was not required by either of the policies. The paper so attached to the proofs was offered in evidence by defendant and received under objection and exception, and the court decided that thereby the burden was imposed upon plaintiffs of showing how the death was produced. *Held* error ; that the affirmative was by the pleadings upon defendant ; and that the proofs, taken as a whole, contained no concession which changed this burden.

*Ins. Co. v. Newton* 22 Wall. 32), distinguished.
*Goldschmidt v. M. L. Ins. Co.* (33 Hun, 441), reversed.

(Argued April 27,1886; decided June 1 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order

made at the October term, 1884, which affirmed a judgment, entered upon a verdict directed by the court. (Reported below, 33 Hun, 441.)

The nature of the action and the material facts are stated in the opinion.

*William G. Wilson* for appellants. The death of the assured being proved on the trial, the burden was on the defendant to show that the policy was void and that no loss had accrued. (*Van Valkenburgh* v. *Am. Popular Life Ins. Co.*, 16 Hun, 583; 1 Greenl. Ev., § 74; *Piedmont and A. Life Ins. Co.* v. *Ewing*, 2 Otto, 377; 2 Greenl. Ev., § 402; Bliss on Ins. 584, 585; 70 N. Y. 609.) The presumption is that the death was due to natural causes. (*Mallory* v. *Trav. Ins. Co.*, 47 N. Y. 54; *Guardian Life Ins. Co.* v. *Hogan*, 80 Ill. 35; *Continental Ins. Co.* v. *Delpench*, 82 Penn. St. 235.)

*Robert Sewell* for respondent. The preliminary proofs of death which were presented to the defendant by the plaintiffs were properly admitted in evidence. (*Ins. Co.* v. *Newton*, 22 Wall. 32.) The proofs were properly taken in their entirety; that is, the affidavits could not be admitted, and the record of the coroner's inquest attached to them be excluded. (*Ins. Co.* v. *Newton, supra; Ins. Co.* v. *Higginbotham*, 95 U. S. 380, 390.) No jury could find that Edler had died from other cause than by his own hand on the evidence as it stood, and that being so, the defendant was entitled to a direction for a verdict. (*Moore* v. *Bristol*, 2 Week. Dig. 293; *Marine Bk.* v. *Clements*, 31 N. Y. 33, 43; *McCall* v. *Sun Mut. Ins. Co.*, 66 id. 505.)

DANFORTH, J. This was an action brought by the plaintiffs, as assignees of two policies of insurance — one for $3,500, the other $1,500 — issued by the defendant upon the life of one Oscar Edler. The defense was that he came to his death by suicide, and so the defendants incurred no liability, but the answer contained an offer of judgment for $231.96, being the

amount of premiums received. Upon trial of the issue the court ruled that the defense was made out, and directed a verdict for so much only as was admitted to be due. The correctness of this ruling turns upon the legal effect of answers and information given in connection with the preliminary proofs of death served by the claimants, and presents the only question suggested by the record.

The policy of $3,500 was payable by its terms "in sixty days after due notice and proof of the death" of the life insured, unless, among other things not material here, "he shall die by his own act or hand, whether sane or insane," in which case "the policy shall be null and void," and the company will return the premiums paid. The character or nature of the proof of death is not specified, nor other language used in reference to it than is above given. The other policy is different. It is payable "within sixty days after notice and the proofs hereinafter required of the death of said Oscar Edler shall have been furnished to the company at its office," and provides "that the proofs of the death by which this contract matures shall contain full and true answers, under oath, to the questions in the company's blanks for proofs of death, relating to the life, health and death of the person in question; and shall include (1) a statement of the extent and character of each and every claimant's interest in the policy; (2) the statement of the physician or physicians, if more than one, who attended the deceased during his last illness or within a year previous; (3) the statement of a responsible householder acquainted with the deceased; (4) the statement of the undertaker."

But the policy declared "that the self-destruction of the person, whether voluntary or involuntary, and whether he be sane or insane at the time, is not a risk assumed by the company in this contract, but, in every such case, the company will, upon demand made and the surrender of this policy, accompanied with satisfactory proofs of such death, within sixty days after its occurrence, pay the net reserve upon it held by the company at the beginning of the year in which death occurs."

The complaint stated that Edler died on the 27th of August, 1876, and, in regard to each policy, that proofs of his death as thereby required were served upon the defendant. The answer admits the death of Edler at or about the time named, and "that proof of his death has been served upon it as in the complaint stated." As to the claim under the first policy the defendant alleges that the "said Edler committed suicide and took his own life by his own act and by his own hand;" and as to the second, that he came to his death by self-destruction. They also put in issue the assignment by him.

Upon the trial the plaintiffs put in evidence the policies and proved their title by assignment. They then called Daniel Goldschmidt, who testified that he was one of the plaintiffs, and he was about to state the consideration of the assignments and the extent of the plaintiffs' claim under them, when the defendant's counsel objected, and the proposed evidence was excluded. He then testified that he knew of Edler's death on the 27th of August, 1876; that he attended the funeral and saw his dead body. The defendant's counsel then placed in the hands of the witness certain papers, marked "Exhibit No. 1, for identification," containing proofs of death and other matters referred to in the second policy, and proved by him that the signature to the certificate was his own and also that of the firm, of which plaintiffs were the members. The exhibit contained various papers, entitled as follows: First, claimants' certificate; second, attending physician's certificate; third, friends' certificate; fourth, undertaker's certificate; all upon the defendant's blanks, and given in answer to questions framed by them. Among those addressed to the claimants, in paper called "claimants' certificate," are these questions and answers:

"Place and date of death? No. 324 West Fifty-second street, in the city of New York, as we are informed and believe; August 27, 1876.

"*a.* Remote cause of death? *a.* Disease of the bladder and urinary organs.

"*b.* When did the health of the deceased first begin to be affected? *b.* Not known to us, but we are informed and believe several months before his death.

" *c.* Immediate cause of death ?   *c.* Not known to us, other than he was afflicted by the above-mentioned disease.

" *d.* Duration of last illness ?   *d.* Not known to us, except that he had been afflicted with the above-mentioned disease for several months before his death.

" *e.* Give every particular in relation thereto within your knowledge ?   *e.* Not known to us, except that for several months he appeared to be suffering severe pain consequent, as we suppose, upon the above-mentioned disease.

" Name and residence of every physician who attended and prescribed for deceased during the last year prior to death, or since he became out of health ?   Dr. F. Zinsser, of No. 47 West Twenty-eighth street, in the city of New York, as we are informed, prescribed for deceased during this period ; we know of no other.

" Did deceased violate any condition of the above-mentioned policy in respect to residence, travel, occupation, use of spirituous liquors, dueling, suicide, violation of law, or had he been convicted of felony ?   No, not to our knowledge."

Then follows this direction and answer : " In case of coroner's inquest, furnish the company with verdict of the jury and all the evidence on which such verdict was based ?   (Ans.) We are informed that what purported to be a coroner's inquest was held ; we annex a copy of what is represented to us to be the verdict of the jury and of the evidence on which said verdict was based.   But we do not hereby admit that there was any such inquest, verdict or evidence, and we deny that the purported finding of such alleged jury was true or well founded, and we deny the fact alleged to have been found by such jury, and we deny the truthfulness of the alleged evidence on which said verdict is said to be based."

Attached to the papers referred to is a copy of the testimony purporting to have been taken before the coroner, and a copy of the inquisition ; in effect that a jury of seven, whose names are given, " upon their oaths and affirmations, say that the said Oscar Edler came to his death by suicide by cyanide of potassium, on the 27th day of August, 1876, at No. 324 West Fifty-second street."

The plaintiffs rested. The defendant's counsel then proposed to read the exhibit " for the purpose of basing a motion thereon, that the complaint be dismissed," "because the proofs of death show affirmatively on the face that this man did not die within any of the risks assumed by this company. They show that he died by his own hand."

The plaintiffs' counsel objected, " except so far as they are evidence of the death as required by the rules of the company, and of the plaintiffs' presentation of proof to the company under their rules," and separately objected to the proceedings before the coroner being introduced in evidence as an admission of the plaintiffs, or as evidence of the statements contained therein.

Both objections were overruled and to each decision the plaintiffs' counsel excepted. The trial judge then ruled " that the complaint should be dismissed unless the plaintiffs showed how the death of Edler was produced; that as to it they had the affirmative." To this the plaintiffs excepted, and they giving no further evidence, the defendant's motion was granted and the complaint dismissed, but on application of defendant's counsel, and against the objection of the plaintiffs, the court subsequently ordered a verdict for the plaintiffs for the sum admitted by defendants to be due.

In these rulings we think the trial court erred. In the first place, the complaint alleges and the answer admits the issuing of the policies, the death of Edler during the life of the policies, that proof of his death was served upon the defendant, and demand of payment made, as set forth in the complaint. So far there was a complete case conceded, and if the plaintiffs' title to recover had not depended upon their character as assignees, which was denied by the answer, no evidence could have been required on their part.

Under the first policy the obligation of the defendant became perfect in sixty days after the death of Edler and notice and proof of his death. No particular form of proof was specified in the policy and the only reference to it is the clause which thus fixes the time when the money is to become payable. No doubt the company were entitled to such proof as

would afford reasonable assurance that their liability for loss existed, but where the policy does not require specific information nothing more can afterward be required. Second, the company did, however, propose inquiries upon the points named in the policy, and they were answered. They had from the claimant the time of death, its remote and its immediate cause. They also had much other information, to which the terms of this policy make no allusion. They had from a friend of Edler and from the undertaker who buried him positive statements on oath as to his death and actual burial and his identity with the person insured. They suggested no defect in these respects. Nor was any suggested on the trial. The only claim was that the copy of the proceedings on the inquest, given in addition to the proof required by the policy, made out a case of suicide and required the plaintiffs to show the contrary. I can discover no principle upon which such a proposition can stand. The policy makes no provision for it. The original proceedings would not be evidence upon the issue. Its verity is not admitted by the claimant; it is denied. It could not have been required by the defendant; it was not adopted by the plaintiffs, but out of what must now seem ill-advised courtesy was furnished to the defendants at their request. It contained matter which, if properly substantiated, would have availed the defendants in maintaining an affirmative defense, but in no view suggested to us by the learned counsel for the respondents could it, as now presented, change the burden from them to the plaintiffs. If, by any process of reasoning, any part could be taken as an admission of the plaintiffs, it must be taken as a whole, and so taken is no concession of any fact, but a mere communication of hearsay evidence, the truth of which is at the same time denied, enough to put the defendant upon inquiry, but in itself is no answer to the plaintiffs' claim, even in the first instance.

It is argued that the court below was controlled by authority, and the case then cited is relied upon by the defendant to uphold the ruling, viz.: *Insurance Company* v. *Newton* (22 Wall. 32). Under what circumstances the proofs in that case were

prepared does not appear, the statement being that " the proofs of death consisted of several affidavits, giving the time, place and circumstances " of the death of the insured, " and the record of the jury upon the coroner's inquest." It may be inferred that the whole were verified by the claimants, and that they were called for by the contract of insurance, for the court held that " the preliminary proofs presented to an insurance company in compliance with the conditions of the policy of insurance are admissible as *prima facie* evidence of the facts stated therein against the insured and in behalf of the company," and the court say " the narration of the manner of the death of the deceased was so interwoven with the statement of his death, that the two things were inseparable."

In the case before us it is quite otherwise. The insurer raised no issue as to the preliminary proofs of death, and they were in all respects complete without the statement as to the coroner's inquest. Its contents formed no part of the representations of the claimants; the statements were not sworn to by them, nor presented as worthy of belief. They were in no respect bound by them. Nor were they necessary, as in the case cited, to qualify the defendant's admission, on which the plaintiffs then relied.

I have spoken more particularly of the first policy. The second policy, as we have seen, contains other provisions concerning proofs of loss. They have been complied with literally. They do not require the facts and circumstances attending the death to be set forth in the proofs, nor do they call for any information concerning an inquest or other examination. Under this policy, as under the other, the question was unwarranted, and although the circumstances stated were calculated to gratify curiosity and perhaps serve a useful end, formed no part of the proofs called for, nor were they given as matter credited by the claimants. The insurer could, so far as it thought proper, regulate its conduct by any suspicions thereby excited, but it could not make use of the statement, as one binding upon the plaintiffs. If the policy was void by reason of any act of Edler, or if his death was from a cause against which they had not in-

sured, it was for them, as the case stood, to make good the averment in the answer, and show by proof that the suicide alleged had been actually committed. It was not necessary for the plaintiffs to ask to go to the jury. The trial court, in admitting the coroner's inquest and proceedings under it in evidence, and deciding that the burden of showing that the insured did not die by his own hand, as therein stated, was on the plaintiffs, committed errors in favor of the defendants and at their request. They cannot now object that some other course might have been taken. As the case stood, no question of fact was in dispute, and the plaintiffs were entitled to recover.

The judgment appealed from should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.