JOHN SANTOS, Respondent, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant. (Action No. 1.)

JOHN SANTOS, Respondent, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant. (Action No. 2.)

MARY SANTOS, Respondent, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant. (Action No. 3.)

MARY SANTOS, Respondent, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant. (Action No. 4.`

Fourth Department, June 26, 1935.

*Earle C. Bastow*, for the appellant.

*Francis T. Ropiecki*, for the respondents.

CROSBY, J. This is one of four cases tried together. Defendant issued four policies of insurance upon the life of Jack Barber, each for $250, and all dated the same day, April 22, 1931. In two of the policies the above-named plaintiff, John Santos, stepfather of the insured, was named as beneficiary, and in the other two policies, Mary Santos, mother of the insured, was named as beneficiary. Except as to the numbers on the four policies, and the beneficiaries named therein, the policies were all identical in form. Each policy provided that " This policy shall not take effect unless upon its date the Insured shall be alive and in sound health." Each policy also provided that " This policy shall be void if the Insured　*　*　* has attended any hospital, 　*　*　* or has been attended by any physician, within two years before the date hereof, for any serious disease, complaint or operation; 　*　*　* unless each such 　*　*　* medical and hospital attendance and previous disease is specifically waived by an endorsement," etc.

Each policy also provided as follows: " Proof of Claim. In case of death of the Insured, proofs of claim shall be made on blanks to be provided by the Company and shall contain full answers of the claimant, physician and other persons to all the questions asked therein," etc.

The defense in each case is made upon three grounds: (1) That, at the date of the policy, the insured was not in sound health; (2) that within two years of the date of the policy the insured had been attended by a physician for a serious disease; and (3) that about five years before the date of the policy the insured had attended a hospital.

Upon the trial plaintiff offered in evidence the policies and proof of payment of premiums. Plaintiff next offered in evidence Exhibits 6, 7 and 8. Exhibit 6 is proof of death signed by plaintiff himself. In it plaintiff stated that the cause of death was " unknown," that the duration of the illness of the insured was " Three days," that insured had attended a hospital and that plaintiff had no knowledge as to treatment, and gave the name of the physician who attended the insured in his last illness.

Exhibit 7 is the statement of the physician named by plaintiff in Exhibit 6 as the one who attended insured in his last illness. He stated that he had known the insured for six years; that the insured was in a hospital in 1926; that the cause of his death was " Banti disease;" that his health was first impaired " 6 years ago," and that the duration of the Banti's disease had been six years.

Exhibit 8 is a statement by another physician who stated that he attended the insured on November 3, 1926, and that the insured was then afflicted with Banti's disease.

Attached to Exhibit 7 is a rider signed by the beneficiaries of all four policies which is as follows: " We disaffirm the statement of the attending physician in reference to the cause of death and the duration of illness and submit the annexed statement under protest. Dated this 7th day of November, 1932.'

And attached to Exhibit 8 is a rider, signed by the beneficiaries of all the policies, undated, and reading as follows: " The annexed certificate form number 453 is herewith submitted under protest."

After Exhibits 6, 7 and 8 were received in evidence plaintiff rested. A motion for nonsuit being denied, defendant sought to prove two things: (1) That the statement appearing on the margin of each of the Exhibits 7 and 8 in the following words:

" It is hereby admitted and agreed that this certificate shall be considered as part of the proofs of death under policy 22026461-2-3-4 in accordance with the conditions thereof.
' (Signed)   JOHN SANTOS<br>MARY SANTOS, <em>Claimant.</em>"

was executed several days after the protesting riders were attached to Exhibits 7 and 8 respectively; and (2) that the Banti's disease, mentioned in Exhibits 7 and 8, is a serious, in fact an incurable, disease. The trial court excluded proof that the marginal statements were executed after the protesting riders were attached, and also excluded proof of the serious character of Banti's disease. Appellant claims that error was committed in both respects.

As to the first exclusion I do not believe it was serious error. This for the reason that it is not of great importance when plaintiff executed the marginal statements. The effect of them was to submit Exhibits 7 and 8 as parts of the proof of death, and, whenever such submission took place, the exhibits had attached to them, as an integral part thereof, the protest and declaration of plaintiff that he disclaimed any responsibility for the statements of the physicians that insured had a serious disease for six years before his death and died from its effects.

The important question is whether or not plaintiff, by means of disclaimer and protest, could destroy the effect of a statement made by the physician of his choosing, when that statement, if allowed to stand, would furnish a defense to the policy.

The policy provision relating to " proof of claim " is that the same " shall be made on blanks to be provided by the Company and shall contain full answers of the claimant, physician and other

persons to all the questions asked therein." That is a part of the contract between the parties. The defendant had nothing to say about the choice of a physician for the insured in his last illness. And if it can be assumed that the insured chose his own physician, plaintiff had no choice in selecting that physician as his agent to make out the proof of death which was required to state, among other things, the cause of death and the duration of the disease that caused death.

Under these circumstances may plaintiff relieve himself from the effect of the physician's statement that the insured had had a serious disease for six years and died from its effects, by merely disclaiming all responsibility for the statement, at the same time offering no proof to show that the physician's statement was untrue? Plaintiff's own statement (Exhibit 6) disclaims any knowledge of the cause of death or the duration of the disease that caused it.

One can easily imagine a case, not this case of course, where a physician, for an ulterior purpose, would put an untrue answer in his statement, or where he might make an honest, but damaging misstatement. A plaintiff should not be bound by such a statement of a physician whose aid he was bound to seek in making proof of death. But here plaintiff makes no attempt to get at the truth. He does not even deny under oath, or otherwise, that the physician's statement of the cause of death and duration of illness are untrue. He merely furnishes the physician's statement, as by his contract he was bound to do, then repudiates it and refuses to take any responsibility for getting at the truth of the matter. And it is a reasonable surmise that he would not permit the physician to testify, if called as a witness.

Under these circumstances we think a jury ought to pass upon the facts in issue, with Exhibits 6, 7 and 8, which are in evidence, before them. We do not say that the physician's statements of the cause of death and the duration of insured's illness are conclusive of the facts stated therein, but only that the jury should pass upon them in the light of the attached riders and the marginal statements appearing thereon. We think, too, that proof should be received on the subject of when the marginal statements were executed, and under what circumstances and with what understanding. And we think that proof should be allowed to show the nature of Banti's disease. (*Rudolph* v. *John Hancock M. L. Ins. Co.*, 251 N. Y. 208.)

The case of *Goldschmidt* v. *Mutual Life Ins. Co.* (102 N. Y. 486) does not hold contrary to what we are holding here. In that case the contract did not bind the plaintiff to furnish the coroner's jury proceedings at all, and plaintiff there made emphatic denial of the alleged facts found by the coroner's jury. As was suggested

in the opinion in the *Goldschmidt* case, the plaintiff was not bound to furnish the insurer the results of the coroner's inquest, and did it only through an " ill-advised courtesy." In the instant case the plaintiff was, by contract, under the duty to furnish the physician's statement of the cause of death and duration of illness, and while he is not conclusively bound by it he should submit to having it considered by the jury along with the other proof bearing on the questions at issue.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

In each case: Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.