## BINDER v. COMMERCIAL TRAVELERS MUT. ACC. ASS'N OF AMERICA.

District Court, S. D. New York.

Jan. 20, 1944.

A. Harold Frost, of New York City (Bernard Jenkin, of New York City, of counsel), for plaintiff.

Moses, Nehrbas & Tyler, of New York City, for defendant.

BRIGHT, District Judge.

Decisions upon the defendant's motions for a directed verdict, made at the close of the plaintiff's case and again at the close of the evidence, were reserved and briefs were requested. Similar action was taken as to the motion to set aside the verdict of the plaintiff.

The questions involved are (1) whether or not proper proof of loss was submitted, (2) whether plaintiff's evidence as a matter of law was insufficient to show that the death of her husband was caused "solely and exclusively by external, violent and accidental means," and (3) whether the verdict was against the weight of evidence. The proof showed without dispute that on September 11, 1941, decedent was driving an automobile upon a public highway, that without any traffic involvement, his car veered off to the side of the road, ran along the grassy part of the shoulder, seemed to slow down, then seemed to pick up a little speed, hit a highway sign and finally collided violently with a Public Service pole and stopped. Death occurred in about five minutes thereafter. An autopsy was performed about three hours after the death, and Dr. Martland, who did it, reported that the cause of death was due to a heart attack, a coronary thrombosis. In his testimony upon the trial, he stated that the autopsy revealed both in gross and microscopically a marked arteriosclerosis, advanced beyond the age of the deceased, and in the right coronary artery a blood clot thrombus, which had been building up for two, three or five days before the death, and which completely filled and occluded the lumen or bore of the artery. Dr. Linke, who was driving on the same highway at a short distance to the rear of the deceased at the time of the accident, and who saw deceased immediately after the accident and was with him when he died, testified that in his opinion the cause of his death was a

coronary disease. Dr. Roberts, also called by the defendant, testified that the formation of a coronary thrombus is a diseased process and one of the most common causes of sudden death.

In behalf of the plaintiff, Drs. Fischer and Burstein, neither of whom had seen or attended the deceased, gave as their opinions that the deceased died of shock following the fracture of his rib in the accident, and that was the sole and exclusive cause of death. It was not disputed that the physical injuries sustained at the time of the collision with the pole aside from whatever shock may have ensued, were not sufficient to cause death; that a coronary thrombosis forms as a result of a disease and that shock is caused and present when such a thrombus occludes the coronary artery. The jury was charged that they should find for the defendant if the death was caused by the thrombus, or if it was caused by shock and coronary thrombosis; and that the plaintiff might recover if the death was caused solely by the shock of the accident and for no other reason, and the thrombus had nothing whatever to do with it.

The policy insured against death which was "the direct and proximate result of and which is caused solely and exclusively by external, violent and accidental means." It required the beneficiary to give notice of any injury by accident, with full particulars of the accident, and its immediate results, within twenty days after the date of the accident, and in addition thereto, notice of death within twenty days after death occurred; and that affirmative proof of loss must be furnished to the Association within ninety days after the date of death.

Purporting to comply with the conditions for notice, plaintiff's attorney wrote the defendant on September 18, 1941, advising it of the death on September 11, 1941, as the result of an accident; and proof of loss was mailed on September 30, 1941, and received by defendant on October 1, 1941. No question has been made as to the timeliness of the service of either document nor as to the sufficiency of the preliminary notice.

The proof of loss states as the date and hour of the accident and where it occurred as September 11, 1941, before noon, Route #29, Newark, N. J.; and as to how it happened "Deceased was driving his car when it became out of control and crashed into a pole causing the death of the deceased. Deceased's car was severely damaged." As required by the blank furnished by defendant, a certified copy of the death certificate signed by Dr. Martland as Chief Medical Examiner of Essex County, N. J., was attached, which stated as the immediate cause of death "Sudden death while driving automobile, coronary thrombosis, coronary arteriosclerosis." The certificate was not filled in in the blanks relating to death due to external causes, accident, etc. Defendant claims that under Wachtel v. Equitable Life Assurance Society, 266 N. Y. 345, 194 N.E. 850, 852, the proof of loss submitted was insufficient; because, although claiming an accident and death as a result thereof, did not show that the death was the direct and proximate result of and was caused solely and exclusively by external, violent and accidental means, but, on the other hand, showed that the death was due to a coronary thrombosis.

█ I think this case is controlled by the decision in the Wachtel case. There double indemnity was to be paid upon due proof of death caused directly, exclusively and independently of all other causes by external, violent and accidental means. There the proof stated that assured died of acute coronary thrombosis. No additional proofs were served there as were none here. There, as here, plaintiff was permitted to introduce evidence that the death was due to an accidental injury by evidence which it was assumed was sufficient to raise a question of fact. Judge Lehman wrote:

"Admissions, in proofs of claims to insurance companies, like other admissions, are subject to explanation. They are not conclusive, and proof may be presented that they are erroneous. Rudolph v. John Hancock Mut. Life Ins. Co., 251 N.Y. 208, 214, 167 N.E. 223. The plaintiff maintains that proofs of death by disease, thus shown to be erroneous, may be regarded as sufficient proofs of death by accident, especially where the insurance companies demanded no additional proof.

"Such contention carries its own refutation. The admission of the cause of death was binding until corrected or explained. * * * An admission erroneously made may be disregarded when proof of the error has been properly admitted. None the less, a party, required by contract to submit proof of certain facts as a condition of

liability, does not perform the condition by submitting through error proof that these facts do not exist.

"We have said in other cases that the requirement of due proof is to be liberally construed in favor of the insured. Glazer v. Home Ins. Co., 190 N.Y. 6, 82 N.E. 727. It may be satisfied where 'such reasonable evidence (is furnished) as the party can command at the time, to give assurance that the event has happened, upon which the liability of the insurers depends. * * * The purpose of the condition is that the insurer may be able intelligently to form some estimate of his rights and liabilities before he is obliged to pay.' O'Reilly v. Guardian Mut. Life Ins. Co., 60 N.Y. 169, 173, 19 Am.Rep. 151. We apply that test here. The proof submitted by the claimant showed, until explained, that the claimant was not entitled to double indemnity. No explanation of the admission that death was due to disease, and no proof that in fact death was due to accident, was ever furnished to these companies. They may have learned from other sources that death was due to accident, in spite of proof to the contrary submitted by the claimant. They may have decided, as a result "of that independent investigation, that they would deny liability for double indemnity, even if formal proof that death was due to accident was thereafter presented. Nevertheless, it remains true that the claimant failed to comply with the stipulated condition to furnish the company with proof which would enable the insurer to frame an intelligent estimate of its rights and * * * liability for double indemnity could arise. The failure of an insurance company to object to the sufficiency of proof, when submitted, may, at times, preclude claim that the proofs did not comply with the terms of the policy. That is not the case where no proof has been submitted that 'the event has happened, upon which the liability of the insurer depends' or where the proof submitted affirmatively shows that no liability exists."

See also the report of this same case in 267 N.Y. 289, 196 N.E. 60, as well as Rudolph v. John Hancock M. L. Ins. Co., 251 N.Y. 208, 167 N.E. 223, and Winter v. New York Life Ins. Co., 260 App.Div. 676, 23 N.Y.S.2d 759.

 Assuming that I may be incorrect in this, we may consider the second point of objection. It was shown without dispute that the thrombus had been forming for from two to five days before the accident. It was not disputed that such a condition was a disease and could not be and was not caused by the accident. It was also conceded that the physical injuries, aside from shock, were not sufficient to cause death. It was not disputed that without any apparent reason, the automobile operated by the deceased left the road, slowed down and then started up again, struck a highway sign and finally collided with the pole. The question upon this branch of the case is whether the death was caused solely by the shock of the accident or by the coronary thrombosis or both; and if the death was caused by shock, whether that shock was solely the result of the collision with the pole, or the result of the occlusion of the artery, or both. In fact, I think that the question may be drawn even to a finer issue. Neither of plaintiff's experts who testified that the sole cause of the death was the shock induced by the injury received in the accident, had ever seen the deceased. The hypothetical question which they answered was based in part upon the report of Dr. Martland's autopsy findings. These two doctors said that he did not report a complete occlusion of the coronary artery, and that fact, coupled with the fact that the heart muscle showed no infarction (which I understand to mean a condition of degeneration caused by the shutting off of the blood supply) and the other symptoms found in the deceased immediately following the accident, the conclusion was inevitable that the shock due to the physical injury was the sole cause of death. Dr. Martland testified positively that the coronary artery was completely occluded by the thrombus which had started to be formed before the accident. Whether there was a question of fact, therefore, it seems to me arises more upon the interpretation upon the autopsy report than upon the fact that there was an occlusion. If there was an occlusion, no one disputes that there was a shock. That there was an occlusion is not denied; the only denial is whether Dr. Martland reported one. I do not think that presented a question for the jury. The death seems to me to have been caused by the disease; or if not that solely, by the combination of the disease and the accident. See also Bush v. Order of United Commercial Travelers, 2 Cir., 124 F.2d 528, certiorari denied 316 U.S. 696, 62 S.Ct.

1291, 86 L.Ed. 1765. Certainly any finding to the contrary is against the weight of evidence.

An order may, therefore, be settled on notice setting aside the verdict and granting the defendant's motion made at the close of the whole case for a directed verdict in its favor.