## PALMER v. MILLER.

### No. 1459.

District Court, W. D. Missouri, W. D.

May 12, 1945.

Edwin S. McAnany, of Kansas City, Kan., and Omar E. Robinson and Charles M. Miller, both of Kansas City, Mo., for plaintiff.

Cowgill & Popham, Arthur C. Popham, and Sam Mandell, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

The plaintiff's motion for a new trial raises sundry questions as to the effect and weight of the testimony as well as alleged errors in the instructions of the court and errors in refusing to give instructions requested by plaintiff, together with alleged misconduct on the part of counsel. All of these matters will be discussed in the course of this memorandum opinion.

At the outset, and in view of the averments of the motion, it seems proper to indicate what the issue or issues were in the case.

The plaintiff seeks damages because of alleged injury to his left ear. The defendant had contracted to supply the plaintiff with a hearing aid for his left ear. In order to make a device that would fit, he undertook to obtain an impression by the use of plaster of Paris. This impression was to be made by putting cotton or packing into the auditory canal so as to prevent the composition in its fluid state from passing into the inner ear or to the tympanic membrane. In the negotiations for the device the defendant made representations to the plaintiff as to the method of taking the impression. The method was acceptable to the plaintiff and accordingly the defendant prepared to take or make the impression by inserting cotton in plaintiff's left ear and thereafter pouring the plaster of Paris in its liquid state into the outer ear. It had been represented to plaintiff that, by use of cotton in the ear, the fluid would be barred or prevented from flowing through the auditory canal into the inner ear or on to the tympanum.

Defendant took the impression in accordance with the method agreed upon, but, plaintiff alleges,

" * * * that in so doing he placed an inadequate amount of cotton or other substance in said auditory canal of plaintiff's left ear, as aforesaid, and so negligently and carelessly packed said auditory canal that said auditory canal was not wholly closed.

" * * * That as a result of said defendant's carelessness and negligence said plaster of Paris so placed in plaintiff's external ear by the defendant, flowed into and passed through said auditory canal into and upon the tympanic membrane and other internal organs of plaintiff's said ear, and having reached same solidified, hardened and became firmly attached to the said membrane and internal organs of said ear."

Concerning the defendant's duty, plaintiff said:

" * * * that it then and there became the duty of defendant to use ordinary care and to do whatever was usual and necessary to be done in closing said auditory canal so as to prevent any part of said plaster of Paris, to be used as aforesaid, from entering into and passing through said canal and thereby penetrate to the said internal organs of plaintiff's said ear; * * *."

There were other averments that the defendant knew, or should have known, the disastrous effect of the plaster of Paris in a liquid state if it became attached to the tympanic membrane and solidified while so attached. It is charged by the plaintiff that the defendant was careless in packing his ear for the impression and, that, because of such carelessness, the material spread not only into the ear but caused entire loss of his hearing in that ear and occasioned intense pain and suffering and prolonged disability.

While the defendant by his answer admitted that he was engaged in the sale to the public of hearing devices, he denied all of the other averments of the complaint.

712

The testimony on behalf of the plaintiff fully sustained his averments that the composition passed to the inner part of the auditory canal and caused permanent deafness with intense intermediate pain and suffering and lasting disability.

The defendant testifying in his own behalf said that the method employed by him had been uniformly followed in a large number of cases; that is to say, that it was proper, in taking impressions, to pack the auditory canal with cotton and then pour the liquid composition into the external ear, and he frankly admitted that, if the canal were properly packed, the fluid would not flow by or by-pass the cotton into the inner ear so as to cause damage. The defendant with commendable frankness admitted that, if the auditory canal of plaintiff's left ear in this case had been properly packed, the liquid would not have escaped into the inner ear.

It was alleged in the petition that it was the defendant's duty to pack the ear in such way as to prevent the composition from flowing by the cotton packing. The defendant undertook to perform that duty, but, in substance, said he had not put sufficient packing in the ear or that it was not properly packed.

The plaintiff, at the close of all of the evidence, asked for a directed verdict for plaintiff. The court refused that instruction, but in the charge to the jury said:

"The whole issue here before you men in this case, * * * is:—Did the defendant take that impression in a careless way? * * * did he use a proper method in a careless manner. Did he so carelessly pack the cotton * * * as to permit the liquid to escape beyond and by-pass the cotton and get into the inside of his ear? That is the whole issue in the case."

The court further said to the jury:

" * * *. if you find that in taking the impression, and by placing cotton in the auditory canal for the purpose of holding back the liquid that he was about to pour into the ear for the purpose of the impression, if you believe and find from the evidence that in placing the cotton in his ear he did it negligently, and that the result of his negligence was that the plaintiff suffered the injuries he asserts here, that he lost his hearing in his ear, then the plaintiff is entitled to recover."

In covering the converse of this instruction on behalf of the defendant, the court said:

"Now then, gentlemen, on the other hand, if you believe and find from the evidence in this case that the defendant not only used the standard method in making the impression, * * * but that in applying the method in the manner in which he inserted the cotton, *unless* he inserted an inadequate or insufficient quantity of cotton when in the exercise of ordinary care, as I have defined ordinary care to you, he could have put in an adequate quantity in order to prevent the escape or the by-passing the cotton and passing the fluid into the inner ear, or into the tympanum, causing the injury, then your verdict should be for the defendant. That is to say, if you find he exercised such care in placing the cotton as a reasonably careful and prudent person would have done under the same or similar circumstances."

In giving the above charge, the reporter understood the court to use the words "or if" instead of the word "unless." If the words "or if" were in fact used, of course the charge was faulty in the extreme. The reporter has been interviewed and her notes were produced for the purpose of ascertaining whether or not the notes were wrongly transcribed. They were not. Her notes show that the words "or if" instead of the word "unless" were used. The use of such words would have been meaningless whereas the use of the word "unless" would make "sense" for the instruction, as was quite clearly the intention when the instruction was given. The jury was told in substance that if, in applying a standard method, the defendant used ordinary care, then the verdict should be for the defendant. But it was carefully pointed out that if there was inadequate or insufficient cotton placed or packed in the ear by the defendant, so as to permit the liquid plaster of Paris to flow by it, then such a situation was excepted from the instruction given on behalf of the defendant. The court is assured with respect to the use of the word "unless" instead of the words "or if" by the fact that at the end of the charge attention was not called by unusually alert and able counsel to an error which, if committed, was glaring. Clearly it would have been the duty of the court to have corrected the instruction if the words "or if" had been in fact used. The difference

between the charge as recorded and as it is believed to have been actually given may be explained upon the theory that in the rapidity of the instruction and probable confusion in the courtroom, the reporter misunderstood the word "unless" and thought the words "or if" were in fact used.

In another part of the charge, in commenting on the testimony, the court said concerning the defendant's testimony:

"He said frankly that if it did get through it was because of insufficient packing, that it had not been packed sufficiently and that by reason of that fact it had got through."

In the light of the foregoing, a discussion of the grounds set up for a new trial can be more intelligently understood.

1. It is the plaintiff's contention that the court should have instructed the jury to find for the plaintiff on the question of liability. This contention is made for the reason that the defendant admitted the averments of the complaint to the effect that the ear was insufficiently packed.

In the case of Northwestern Fuel Co. v. Danielson, 57 F. 915, loc. cit. 920, the late Honorable Walter H. Sanborn of the 8th Circuit Court of Appeals said:

" * * * but where there is no dispute about the facts, and they are such that but one conclusion can fairly be drawn from them by reasonable men, it is the duty of the court to declare that conclusion to the jury. If the evidence is of such a conclusive character that the court, in the exercise of a sound judicial discretion, would be bound to set aside a verdict returned in opposition to it, it is its duty to direct a verdict for the plaintiff or the defendant, as may be proper."

Many cases were cited by Judge Sanborn in support of this proposition.

The late Judge Van Valkenburgh cited with approval this pronouncement of Judge Sanborn, in Andresen v. Kaercher, 8 Cir., 38 F.2d 462, loc. cit. 465. Judge Van Valkenburgh was content to quote the exact language of Judge Sanborn in disposing of a similar question.

In the case of Jones v. Smith, C.C., 158 F. 911, the district judge of the Eastern District of Pennsylvania expressed a regret that he had not directed a verdict for plaintiff where a jury had found adversely to the plaintiff. The district judge supposed (as in this case) that the jury would make a proper finding and, concerning its failure to do so, he said:

"As it has turned out, however, it would have been better if I had given the instruction in so many words that the plaintiff was entitled to a verdict, leaving the amount only to be determined by the jury."

At the time the instruction here was presented by counsel to the court, the view of the Court of Appeals in a former trial (Palmer v. Miller, 8 Cir., 145 F.2d 926, loc. cit. 931) appeared to preclude such an instruction. The court there said:

"In a *case such as this, where the uncertainty as to the existence of negligence does not arise from a conflict of evidence,* but 'because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them' * * *."

This court was of the opinion that this ruling by the Court of Appeals had become the law of the case and that the question of liability should be submitted to a jury. The Court of Appeals cited as authority the case of Gunning v. Cooley, 281 U.S. 90, loc. cit. 94, 50 S.Ct. 231, 233, 74 L.Ed. 720. The court did not refer to the stronger statement by the Supreme Court on the same page:

"Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury."

█ In the light of the authorities it is obvious that the court should have pointed out to the jury that there was no controversy on the question of carelessness on the part of the defendant and that its verdict should be for the plaintiff in some amount. This was the duty, unless, as indicated, the opinion in the same case on appeal from a former verdict and judgment had determined the law differently.

As said by District Judge J. B. McPherson in the Pennsylvania case, Jones v. Smith, supra, the court was of the opinion under the instructions given that a verdict in some amount would be returned for the plaintiff and that it seemed unnecessary to direct the jury to do so.

█ The verdict in this case ought not to stand for the reason that the plaintiff has suffered serious injury, including the loss of his hearing, without any fault

on his part, but, according to the admission of the defendant, his injury accrued to him solely because the defendant did not put an adequate quantity of cotton in his ear or did not properly pack such cotton when he took the impression. It is undeniable that it was the duty of the defendant to pack the ear so that the fluid would not flow by the packing. Reason and ordinary experience would say that that was not a difficult task and could have easily been done. The defendant had done it properly and successfully in a hundred cases. It was his duty to have done it properly and successfully in this case.

■ 2. Under the law, the court is clothed with authority by Section 391, Title 28 U.S.C.A., to grant a new trial, as follows:

"All United States courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law."

In Garrison v. United States, 4 Cir., 62 F.2d 41, loc. cit. 42, the court said:

"Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a *miscarriage of justice.*"

In Duggan v. Fidelity & Casualty Co., Mo.App., 296 S.W. 822, loc. cit. 823, the St. Louis Court of Appeals, in upholding an order of court granting a new trial, said:

"There can be no question, on the record here, that plaintiff made out a strong case for the jury on this issue."

That is to say, on the sole issue that was presented, as to whether or not an article had been stolen, and which article had been insured by the defendant.

In commenting on the justice and propriety of a new trial, the late Judge Graves of the Supreme Court of Missouri, in Keller v. St. Louis Butchers' Supply Co., 229 S.W. 173, loc. cit. 175, said, where the trial judge was of the opinion that the verdict was contrary to the weight of the evidence:

"At common law the court could for this cause set aside verdicts in such case as fast as they came to him, and as often as he saw fit to exercise the right."

Then, in discussing a Missouri statute which forbids more than one new trial on the ground that the verdict was against the weight of the evidence, Judge Graves said:

"The well-matured doctrine of the common law usually reached exact justice, and it is doubtful as to whether the real ends of justice have been subserved by our statutory modification of the common-law rule."

The common law prevails in the federal court.

In the case of Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226, loc. cit. 238-239, 237 S.W. 779, 782, the court said:

"It has been the settled doctrine of this court for more than 40 years that the trial court may grant one new trial to either party, where the verdict returned is deemed to be contrary to the weight of the evidence."

The author of that opinion then quoted from Judge Wagner, a former judge of the same court, in part as follows:

"'* * * and where the trial court is of the opinion that the verdict is not supported by the evidence, or is against the weight of evidence, it should never hesitate in exercising the power and giving the aggrieved party a new trial.'"

The writer sat in the above case and concurred in the opinion.

3. The third ground of the motion refers to claimed inadvertence in the charge. The statement of facts as hereinbefore made is probably sufficient discussion of that subject. If the court used the words "or if" in the charge, as above set out, then it was an erroneous charge. However, it is the court's recollection that such words were not used, and most certainly it was never intended that they should have been used. They not only fail to make sense, but able counsel would have challenged their use at the time. The reporter, however, has produced her records showing that they were used. If the word "unless" was used in the charge, then the charge was favorable to plaintiff. However, in view of the ruling on other grounds, it is needless to discuss that question further.

■ 4. The plaintiff further complains that the court erred in refusing requested Instructions 1 and 2. The first instruction was for a directed verdict in favor of plaintiff. It could hardly have

been given as drawn for the reason that it directed a verdict generally for the plaintiff. The only peremptory instruction that could properly have been given was one telling the jury in substance that they must assume liability on the part of the defendant and that their function thereafter was to determine the amount of damages. The proposed instruction was not so drawn. The second instruction was an elaborate proposal with respect to the duty of the defendant to acquaint himself with the many modern means of taking impressions as in this case. That seemed wholly unnecessary. The pertinent and proper portions of the instruction were actually given by the court.

5. The last ground assigned was that counsel for the defendant was guilty of improper conduct toward the jury, which probably influenced the verdict. The alleged improper conduct was conversation with the jury during the intermissions of the court.

■■■ On that subject, the Supreme Court, in Kennedy v. Holladay, 105 Mo. 24, loc. cit. 35, 36, 16 S.W. 688, 691, said:

"It is the practice in this state, in civil cases, to permit the jury to separate at the usual recesses of the court, under a charge not to talk with any person in regard to the case, or permit others to talk with them, or in their presence, in regard to it.

" * * * the courts look with suspicion upon any communications between parties to a suit and a juror impaneled to try it; and if such communication is had, and it appears that the parties talked about the suit or the communication is not explained satisfactorily, it will, in itself, be ground for new trial. If, when explained, however, it can be seen that in the communication nothing was said about the case, and nothing said or done for the purpose of influencing the mind of the juror, and the court cannot see from what was said or done, or from the verdict rendered by the jury that such communication had any influence in directing the verdict, it will not be set aside on account thereof."

■■■ In this case counsel explained the conversation. Such conversation pertained to other matters than the case. However,

the Kansas City Court of Appeals, in McGraw v. O'Neil, 123 Mo.App. 691, loc. cit. 708, 101 S.W. 132, 137, pointed out the proper conduct to litigants during the course of a trial:

"It is the duty of litigants and their attorneys to refrain, while the trial is in progress, from seeking the companionship of jurors during the necessary adjournments and recesses. They should avoid even the appearance of evil, and, when it is brought to the attention of the trial judge that any person interested in the result of the cause on trial is attempting to court favor with jurors by any sort of attention, a prompt and sufficient rebuke should be administered, and should it appear that a party or his counsel with improper design has succeeded in bestowing favor on a juror, though it consists of nothing more than social attention, a verdict in favor of the offending party should be set aside."

Attention is called to the above case, not with the idea that the facts become so important in the present case, for the reason that on other grounds a new trial should be granted, but the admonitions of the opinion should be kept in mind generally by litigants and their attorneys in trying cases.

While the court is mindful that two juries have returned verdicts for defendant, yet that fact should not deter the court from granting a new trial when it is so obvious and clear that the verdicts were not only contrary to the evidence but an unmistakable miscarriage of justice. The issue of liability was a narrow and a simple one. A trial, too greatly prolonged, was conducted on both sides by very capable, alert and learned counsel. The attention of an honest and sincere jury was probably diverted from the issues to the more interesting and rather fascinating contest of wits between able counsel. The rapier-like verbal thrusts, brilliant retorts and repartee, flashes of challenging oratory combined to obscure the real issue in the case and left the jury under a spell from which it could not be aroused by the court's prosy charge, even if correct.

In view of the foregoing, and in the interest of justice, a new trial should be granted and it will be so ordered.