**BINDER v. COMMERCIAL TRAVELERS MUT. ACC. ASS'N OF AMERICA.**

No. 65, Docket 20734.

Circuit Court of Appeals, Second Circuit.

Nov. 28, 1947.

On Rehearing Jan. 15, 1948.

A. Harold Frost, of New York City (Bernard Jenkin, of New York City, on the brief), for plaintiff-appellant.

Henry C. Moses, of New York City (Moses, Nehrbas & Tyler, of New York City, on the brief), for defendant-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, the widow of Arthur J. Binder, is the beneficiary named in an accident policy on his life issued by defendant. The policy insured against death "which is the direct and proximate result of and which is caused solely and exclusively by external, violent and accidental means." Plaintiff claimed that her husband's death was due to an automobile accident, while defendant contended that his death was due to a coronary thrombosis, just prior to and actually the cause of the accident. Defendant also claimed that the proof of loss submitted to it by plaintiff was insufficient. Trial to a jury resulted in a verdict for the plaintiff; but thereafter the court granted defend-

ant's motion to set aside the verdict, as well as a motion for a directed verdict which it had reserved for further consideration. In so doing the court held both that the proof of loss was insufficient and that the verdict was against the weight of the evidence. D.C.S.D.N.Y., 57 F.Supp. 821. From the resulting judgment against the plaintiff on the merits, she appeals.

From the evidence adduced at the trial the following facts appeared: On the morning of September 11, 1941, the decedent was driving an automobile along Route 9, near Newark, N. J. While so driving, his car, without involving any other motor vehicle, veered off to the side of the road and on its shoulder, ran along the grassy part of the shoulder, started to slow down, then picked up a little speed, hit a highway sign, and finally crashed into a Public Service pole. He was removed from the car while still alive; but in less than five minutes he was dead.

The decedent was about forty-five years old at the time of his death. During his married life he had not suffered from other than minor ailments. For a period of six years prior to his death he was afflicted with gout in his great toe, which had grown progressively worse. In outward appearance he was a normal individual, somewhat overweight, but apparently actively engaged in the pursuit of his occupation as a traveling salesman, operating an automobile perhaps 50,000 miles a year. As far as it is known he had no bad habits. He bowled, played golf and ping-pong, swam, and fished. He indulged in many of the physical activities which are normal to persons of his age. On three occasions prior to the occurrence in question, while driving an automobile, he had been attacked by what is claimed was the gout and he either lost control of the car and went off the road or had relinquished its further operation to his wife or son.

In May, 1941, he was involved in an accident and was treated by Dr. Kearney, who in an examination at that time and again one and two months later found no evidence of heart disease or of circulatory disease.[1] At the time of his death he was examined by Dr. Linke, who came along the highway and saw him before he died. Dr. Linke reports that he was pale, cold, and clammy, that his breathing was heavy and gradually petered out, and that he never regained consciousness. Dr. Linke was of the opinion that death was due to a coronary disease.

About three hours after his death an autopsy was performed by Dr. Martland, Chief Medical Examiner of Essex County. The autopsy revealed a fracture of the sixth rib in midaxillary line with a small amount of hemorrhage. The gross examination reported: "Right coronary opens in normal position and there is a fresh thrombus about 5 mms. in size just below its origin."

The microscopic examination revealed: "Sections through right coronary show marked, old atheroma of vessel wall. The lumen is almost entirely filled with a fresh thrombus which is firmly attached to broken intima, showing subintimal hemorrhage. The clot is well organized showing a network of fibrin in the meshes of which are entangled leucocytes and around which are red blood cells."

Dr. Martland's conclusion as stated in his report was: "This case is one of sudden death due to a recent thrombosis of the right coronary artery. * * * I am, therefore, of the opinion that the cause of death is due entirely to natural causes, and that the heart attack caused the accident. The injuries are not sufficient to explain death."

Plaintiff presented the testimony of two medical experts. Each, in answer to a hypothetical question as to the cause of death, categorically denied it was due to a coronary occlusion, and strongly insisted it resulted from shock caused by the fracture of the rib. Each asserted death was caused solely and exclusively by external causes, namely the described accident. Neither witness had ever seen the deceased. The hypothetical question embodied the facts as above set forth, but did not contain

---

[1] A statement to like effect from another doctor appears not to have been finally admitted in evidence.

the reported opinions of Dr. Linke and Dr. Martland as to the cause of death.

Thereafter Dr. Martland testified that the naked eye examination revealed the lumen to be entirely filled with a fresh thrombus. The apparent discrepancy of this statement with his earlier report that the lumen was "almost" entirely filled and the contention that in view of the hundreds of autopsies he makes his report is the more authentic testimony, he answered by saying that when the artery was opened to examine the clot at the time of the autopsy some of the clot broke off and fell out, a circumstance which recalled this case particularly to his mind.

On setting aside the verdict as against the weight of the evidence, the court granted the motion for a new trial. Its final judgment on the merits was therefore because of the insufficiency of the proof of loss. In so doing the court relied on the authority of Wachtel v. Equitable Life Assur. Soc. of United States, 266 N.Y. 345, 194 N.E. 850. The facts relating to the submission of proof of loss are these: The policy required written notice of death by accident within twenty days, and affirmative proof of loss within ninety days, after date of death. A week after the accident plaintiff's attorney advised defendant of the insured's death as a result of accident. Proof of loss, made out on defendant's own forms and signed and sworn to by plaintiff, was returned October 1, 1941. On this she had filled out the "Date and hour of accident" and where it occurred; and then in response to the direction, "State how it happened," she wrote: "Deceased was driving his car when it became out of control and crashed into a pole causing the death of the deceased. Deceased's car was severly [sic] damaged."

A note to the form directed that the death certificate be attached. This she did. The certificate, however, was signed by Dr. Martland, who had stated as the immediate cause of death: "Sudden death while driving automobile; coronary thrombosis; coronary arteriosclerosis."

The court, believing the Wachtel case compelled its conclusion, held that the proof of loss was insufficient because it showed death to have resulted from coronary thrombosis, rather than solely and exclusively by accidental means. Plaintiff assigns both rulings as error.

■■ 1. The requirement of a proof of loss is to be liberally construed in favor of the insured. Glazer v. Home Ins. Co., 190 N.Y. 6, 82 N.E. 727. Here the proof affirmatively stated that death resulted when deceased's car got "out of control and crashed into a pole." The sworn statement, on a form furnished by the defendant and in answer to questions there set forth, gave details as to time and place of accident. Certainly this in itself would meet the requirements of furnishing "such reasonable evidence as the party can command at the time, to give assurance that the event has happened, upon which the liability of the insurers depends," and of providing information by which "the insurer may be able intelligently to form some estimate of his rights and liabilities before he is obliged to pay." O'Reilly v. Guardian Mut. Life Ins. Co. of N. Y., 60 N.Y. 169, 173, 19 Am.Rep. 151. Such proof has never been construed as that required in a lawsuit in order that a beneficiary should recover. See Bilsky v. Mutual Benefit Health & Accident Ass'n, City Ct., 49 N.Y.S.2d 149, affirmed 182 Misc. 122, 49 N.Y.S.2d 848, and 268 App.Div. 973, 52 N.Y.S.2d 576; Dana v. Northwestern Mut. Life Ins. Co., 152 Misc. 383, 272 N.Y.S. 296, affirmed 236 App.Div. 836, 259 N.Y.S. 1011; Berkowitz v. New York Life Ins. Co., 256 App.Div. 324, 10 N.Y.S.2d 106; Levine v. New York Life Ins. Co., 155 Misc. 806, 280 N.Y.S. 468, affirmed 246 App.Div. 703, 285 N.Y.S. 532. Moreover, the information supplied fully meets the proof required by the policy itself, viz., "written proof covering the occurrence, surrounding circumstances, character and extent both of the loss for which claim is made and of the accident causing such loss."

■ Defendant's reliance is, of course, on the attached death certificate as showing death due to coronary thrombosis and, especially since there was no entry in that section of the certificate which called for a statement where death was due to ex-

ternal causes, that it had not resulted from accident. Defendant's contention is: (1) Timely submission of proof of death by accident is a condition precedent to its liability; (2) the proof submitted shows death was caused by disease, not accident; (3) hence there has not been a proper proof of loss and plaintiff cannot maintain this action. This syllogism is no stronger than its minor premise. But surely plaintiff's sworn statement emphatically attributed death to accident. The certificate was furnished in accordance with the requirement of defendant's form, not as the plaintiff's own intended proof. To have refused to comply with the demand for it would have invited litigation. Plaintiff had not selected the doctor or assumed responsibility for the statements contained in his statement. She did not swear to the validity or correctness of the death certificate, nor was she required to do so. It was procured on demand of the defendant, who must therefore take it for what it is worth, and not as a final concession against plaintiff's claim. Cushman v. United States Life Ins. Co., 70 N.Y. 72, 79, 80. See Redmond v. Industrial Ben. Ass'n, 150 N.Y. 167, 173, 44 N.E. 769; Santos v. John Hancock Mut. Life Ins. Co., 245 App.Div. 198, 281 N.Y.S. 35, 39. Indeed, defendant's attempt to distinguish between an admission against interest and proof of loss loses all point if the statement in the certificate is held to override plaintiff's own sworn description of the occurrence.

Nor do we consider Wachtel v. Equitable Life Assur. Soc. of United States, supra, as authority to the contrary. There the plaintiff, beneficiary of three double-indemnity policies, sought to recover on the ground that the insured's death was the result of an accident. None of the defendant companies denied their liability for the indemnity payable upon a natural death, but all resisted plaintiff's claim for the additional accident indemnity, because due proof of loss had not been submitted as required by the policies. The death certificate executed by the attending physician and the proofs of death furnished by the plaintiff gave coronary thrombosis as the cause of death. Plaintiff based her claim of accident as one occurring a month before the insured's death when he stepped from bed and injured his leg. But the proof submitted to only one of the companies suggested death as due to a leg injury, and even there plaintiff unequivocally stated that death had been caused by coronary thrombosis. The court, while recognizing that such admissions were not conclusive and that proof could be presented to show they were erroneous, held that plaintiff could not recover, since she had not submitted proof of accidental death, and that the proof affirmatively showed an absence of liability. Nevertheless, there was a strong dissenting opinion by two judges, who relied on the indefinite references to the leg injury as sufficient proof of death by accidental means. The two striking and obvious differences here are that the proof could be interpreted only in the light of the single possible claim of accident—death from natural causes being no ground of liability—and that the proof furnished by plaintiff's own statement was clear and definite. There was no chance of its being misunderstood.

Two other cases cited by defendant, City Bank Farmers Trust Co. v. Equitable Life Assur. Soc. of United States, 246 App.Div. 256, 285 N.Y.S. 250, affirmed 272 N.Y. 448, 3 N.E.2d 863, and Fox v. New York Life Ins. Co., 178 Misc. 673, 36 N.Y.S.2d 16, 17, affirmed 265 App.Div. 846, 38 N.Y.S.2d 361, are not particularly in point. In the first, the proof furnished on a double-indemnity life policy set forth merely that death was caused by carbon monoxide gas, while the facts stated pointed to suicide and the physician's affidavit negatived an accident and the coroner's jury so found. In the second, the initial proof showed death as due to "lobar pneumonia, ruptured appendix." It was held that the force of this could not be overthrown by plaintiff's unsupported claim on information and belief, more than seven years later, that death was due to accident. On the other hand in Bilsky v. Mutual Benefit Health & Accident Ass'n, supra, a proof less definite and certain than that before us was held adequate.

Moreover, the defendant received, accepted, and retained the proof of loss,

thereby admitting its sufficiency in form. Howell v. John Hancock Mut. Life Ins. Co. of Boston, Mass., 286 N.Y. 179, 36 N.E.2d 102. Nor does N. Y. Insurance Law, Consol.Laws, c. 28, § 164, sub. 6, require otherwise; it provides only that acceptance shall not waive defense of claims under the policy, a different matter from waiver of defects in the proof of loss. See Englander v. Springfield Fire & Marine Ins. Co., 232 App.Div. 463, 251 N.Y.S. 298. Defendant required proof of loss by accident within ninety days of the death. It timely received such proof, full and fair on the face thereof, and accepted and retained the document without comment. To allow it after its time limit had expired to avoid payment of the claim thus presented to it is to suggest an effective trap for unschooled beneficiaries. We are convinced that the court erred in sustaining this defense.

 2. In setting aside the verdict as against the "weight" of the evidence, we think the district judge resorted to a formula which is no longer (if it ever was) appropriate. The discussions in the opinions in Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458, show that it is the jury's, not the court's, function to weigh the evidence, and it is only where there is lacking any evidence of substance upon which reasonable men could reach the result represented by the verdict that a judge may interfere. This was not such a case. Two expert witnesses for the plaintiff categorically denied that death was caused by coronary thrombosis. Each asserted it resulted from shock produced by the rib fracture. They were subjected to a long, skillful, and searching cross-examination; their conclusions remained unshaken. It is true that they had not seen or examined the deceased, but their conclusions were founded on undisputed evidence as to his state of health before the accident and the facts set forth in the gross and microscopic examination. True, Dr. Martland, who performed the autopsy, tes-

tified that there was a complete coronary occlusion. But the court overlooked that this testimony was under sharp attack by plaintiff. Whether the lumen of the artery was filled was a question of fact for the jury. The report of the autopsy does not unquestionably show an occlusion, and Dr. Martland's later explanation of his written statement was a matter for the consideration of the jury in deciding the weight to be given his oral testimony that the lumen was completely filled. When the jury, having in mind this inconsistency (as they could find), chose to give more weight to the evidence of the plaintiff's witnesses than to that of the doctor who performed the autopsy, they were acting within the field of their responsibility.

Reversed for the entry of a judgment for plaintiff on the verdict.

### On Petition for Rehearing.

 Defendant has petitioned for a limited rehearing as to the form of mandate to be handed down on the decision of this court. It suggests that the district judge who had granted defendant's reserved motion for a directed verdict had alternatively granted a motion for a new trial and that our decision reversing the first holding could not properly go so far as to direct entry of judgment for plaintiff on the verdict, thus denying a new trial. Plaintiff has answered the petition urging that our former ruling should stand; but we conclude that the precedents require the result urged by defendant.

While defendant's motions, made orally during and at the close of the trial, do not in terms mention a new trial, yet the trial judge interpreted them thus inclusively and his order of February 9, 1944, so states explicitly. We cannot well question his interpretation; and the fact that a superfluous "judgment" was entered later, on February 17, 1944, in more limited terms does not change this result. Leonard v. Prince Line, 2 Cir., 157 F.2d 987, 989.[1] And the judge's order of February 9, after stating

---

[1] The long delays in this and other cases, however distressing in view of such prods as 28 U.S.C.A. § 448, seem beyond the power of an appellate court to avoid. Action was instituted April 1, 1942, the verdict of the jury was rendered on Dec. 28, 1942, the opinion ordering the verdict set aside was filed Jan. 21, 1944, the record was filed in this court Sept. 18, 1947 (the time having been extended by stipulation), the

that the verdict was set aside and judgment was entered for the defendant, continued: "and it is further

"Ordered that the defendant's motion to set aside the verdict and for a new trial be and the same is hereby granted upon the ground that the verdict is against the weight of evidence. (As to this practice see Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.)"

While this second order is not designated as an alternative one, that appears to be its intended effect, as the reference to the Montgomery Ward case would imply. So viewed, it comes within the very terms of that decision, 311 U.S. 243, 254, 61 S.Ct. 189, at page 196, 85 L.Ed. 147: "Should the trial judge enter judgment n. o. v. and, in the alternative, grant a new trial on any of the grounds assigned therefor, his disposition of the motion for a new trial would not ordinarily be reviewable [fn. 15], and only his action in entering judgment would be ground of appeal. If the judgment were reversed, the case, on remand, would be governed by the trial judge's award of a new trial."

Footnote 15 cites these cases: United States v. Young, 94 U.S. 258, 24 L.Ed. 153; Young v. United States, 95 U.S. 641, 24 L. Ed. 467; Phillips v. Negley, 117 U.S. 665, 671, 6 S.Ct. 901, 29 L.Ed. 1013; Hume v. Bowie, 148 U.S. 245, 13 S.Ct. 582, 37 L.Ed. 438; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481-485, 53 S.Ct. 252, 77 L.Ed. 439. To be noted, too, is an earlier statement, page 253 of 311 U.S., page 195 of 61 S.Ct., 85 L.Ed. 147, that an order denying a new trial, "save in most exceptional circumstances, is not appealable," citing the Fairmount case.[2] Such exceptional circumstances for the review of the trial court's discretion are limited substantially to errors of law and do not include a new trial ordered because the verdict is against the weight of the evidence. See

cases collected, 287 U.S. 474, at page 481, 53 S.Ct. 252, 77 L.Ed. 439. The motion is then addressed to the judge "as a thirteenth juror." McBride v. Neal, 7 Cir., 214 F. 966, 968.[3]

Recent developments fortify the general conclusion here stated. For the Advisory Committee, attempting to codify the results reached by some of the intermediate courts, recommended an amendment to Rule 50(b), F.R.C.P., 28 U.S.C.A. following section 723c, to make clear the power of the appellate court to act in this and other instances. Report, June, 1946, Rule 50(b), pages 61-63, with Committee Note, pages 64-66. But this was one of the three proposed amendments which the Court did not adopt. Order Dec. 27, 1946, 329 U.S. 843; cf. H.R. Doc. No. 473, 80th Cong., 1st Sess., page 105. The view of the Court was later explained in the case of Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S. Ct. 752, reversing a direction of judgment by an appellate court, West Virginia Pulp & Paper Co. v. Cone, 4 Cir., 153 F.2d 576, because no motion for judgment notwithstanding the verdict had been made. In so deciding, the Court pointed out that the trial judge would have discretion to decide whether a new trial or a judgment notwithstanding the verdict should be ordered, and declined to sanction a course interfering with his "primary discretionary responsibility." 330 U.S. 218, 67 S.Ct. 756. Finally, in Globe Liquor Co. v. Roman, 68 S.Ct. 246, the Court again reiterated its regard for this discretionary power of the trial judge and modified a direction for judgment by the circuit court of appeals to provide instead for a new trial where the successful appellant had failed to move below to set aside a directed verdict.

Hence we cannot interfere with the judge's discretionary power in ordering a new trial. The petition for rehearing is therefore granted, our previous opinion and

---

appeal was argued Nov. 7, and our decision was made on Nov. 28, 1947. Of course delays are particularly burdensome in a period of rapid fluctuation in the value of the dollar.

[2] The appellate court has jurisdiction of the appeal; the order in the Fairmount case was for affirmance of the district

court's denial of a new trial, not for dismissal of the appeal.

[3] It is stated in Palmer v. Miller, D.C. W.D.Mo., 60 F.Supp. 710, 714, that a state restriction upon the number of times a verdict may be thus set aside does not apply in the common-law practice applicable in the federal courts, 28 U.S.C.A. § 391, now incorporated in F.R. 59.

the judgment thereon are modified to state that the order of the district court setting aside the verdict and directing a judgment for the defendant is reversed, while its order for a new trial is affirmed, and the case is remanded to the district court.